THOMAS A. GRAMAN, Plaintiff-Appellee, *v.* CONTINENTAL CASUALTY COMPANY, Defendant-Appellant.

Fifth District    No. 79-417

Opinion filed August 20, 1980.

Wagner, Bertrand, Bauman & Schmieder, of Belleville, and Heyl, Royster, Voelker & Allen, of Peoria (Bernard H. Bertrand and Lyle W. Allen, of counsel), for appellant.

Harris & Lambert, of Marion, for appellee.

Mr. JUSTICE HARRISON delivered the opinion of the court:

Defendant Continental Casualty Company (Continental) appeals from a judgment of the circuit court of Franklin County granting plaintiff Thomas Graman's motion for summary judgment and denying its motion for summary judgment. On appeal Continental contends that plaintiff was issued a "claims made" policy which required any claim against plaintiff to be made within the period of the policy and be reported to the company no later than 60 days subsequent to the expiration of the policy period. Continental argues that since the claim in question against plaintiff was not filed until after the policy expired, and it was not put on notice of said claim until more than three years subsequent to the expiration of the policy, the trial court improperly denied its motion for summary judgment and granted that of plaintiff. We agree and therefore reverse the judgment of the circuit court.

Plaintiff, working as an architect, entered into an architectural contract with Benton Consolidated High School District No. 3 on December 18, 1967, for the construction of a new school building. The construction was performed and in August of 1973, plaintiff accepted the work of the contractor on the building. However, on September 1, 1973, the school district notified plaintiff of problems with the roof. For approximately four years thereafter, certain steps were taken by plaintiff, the contractor and the school district in order to rectify the problem. However, the situation was apparently never corrected to the satisfaction of the school district, which filed suit on October 11, 1977, against plaintiff and numerous other parties for defective design and construction of the roof. Plaintiff tendered the defense of the suit to Continental by forwarding the summons and complaint to it. However, by letters on March 1, 1978, and April 21, 1978, Continental denied coverage and refused to defend the suit.

Plaintiff had initially purchased a professional liability policy from

Continental on February 1, 1961, which policy was renewed through February 1, 1974. It was again renewed for the period from February 1, 1974, through February 1, 1975, but cancelled by plaintiff effective June 26, 1974. All of the Continental policies which plaintiff purchased contained the following terms:

"I.   Coverage

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages if legal liability arises out of the performance of professional services for others in the insured's capacity as an architect or engineer and if such legal liability is caused by an error, omission or negligent act of the insured or of any person or organization for whom the insured is legally liable. The Company shall have the right and duty to defend any suit or arbitration proceeding against the insured seeking damages covered hereunder, even if any of the allegations of the suit or arbitration proceeding are groundless, false or fraudulent. However, the Company shall not be obligated to pay any claim, defend any suit or pay any claims expenses after the limit of the Company's liability has been exhausted by payment of claims or claims expenses.

\* \* \*

III.   Place and Time of Error, Omission or Negligent Act

\* \* \*

(b)   Time

The insurance afforded by this policy applies to errors, omissions or negligent acts which occur on or after the date stated in item 6 of the declarations (the effective date of the first policy issued and continuously renewed by the Company) provided that claim therefor is first made against the insured during this policy period and reported in writing to the Company during this policy period or within 60 days after the expiration of this policy period."

Subsequent to Continental's denial of coverage, plaintiff filed a complaint for a declaratory judgment on May 18, 1978. Continental's answer, filed July 27, 1978, alleged that since plaintiff had cancelled the policy on June 26, 1974, and first notified Continental of this suit only on November 30, 1977, no justiciable controversy as to coverage existed. Continental filed a motion for summary judgment on December 22, 1978, charging that since no claim was reported to the company prior to the cancellation date, or

thereafter, there was no coverage afforded under the policy. On January 8, 1979, plaintiff filed his motion for summary judgment, stating that the October 11, 1977, complaint of Benton School District against him alleged a cause of action which was potentially covered under the policy, and that such potential coverage created a duty on the part of Continental to defend the action against him. The plaintiff further alleged that Continental failed to defend under a reservation of rights and failed to secure a declaratory judgment of its rights under the policy or seek an adjudication of its rights in a separate suit, and was, therefore, estopped from claiming a defense of noncoverage.

The trial court entered judgment in favor of the plaintiff and against Continental on June 25, 1979. However, the court vacated that judgment and filed a second judgment on July 20, 1979. The trial court granted plaintiff's motion for summary judgment on the grounds that the insurance policy covered the facts alleged in the Benton School District suit and that Continental had a duty to defend plaintiff in that case. The court granted plaintiff's motion for summary judgment and denied Continental's motion for summary judgment, and ordered Continental to assume the defense of the Benton suit, pay any judgment rendered against plaintiff in that case, and pay plaintiff's attorney's fees and expenses arising out of said suit until Continental assumed the defense therein. Continental filed a motion to reconsider the judgment of the trial court, but filed notice of appeal before the trial court had ruled on the motion. However, the trial court denied said motion on August 30, 1979, questioning its jurisdiction to do so. This is the posture in which the case is presented to this court.

Continental contends the policy it issued to plaintiff was a "claims made" policy, that determination carrying a certain significance to the disposition of the case. Plaintiff responds that such a characterization of the policy is immaterial, for the duty of the company to defend him attaches notwithstanding the type of policy involved.

■■ The above-quoted language from the policy makes it clear, we believe, that in order to be covered, any claim for a professional error, omission or negligent act against plaintiff must be first made during the life of the policy. In addition, the policy mandates the insured to notify the insurer in writing of the claim within the life of the policy or within 60 days of the expiration of the policy period. It is well established that the "claims made" or "discovery" policy is characterized by coverage for negligent acts or omissions only if such are discovered during and brought to the attention of the insurer within the policy term. (*Livingston Parish School Board v. Fireman's Fund American Insurance Co.* (La. 1973), 282 So.2d 478, 481; *Rotwein v. General Accident Group* (1968), 103 N.J. Super. 406, 417-19, 247 A.2d 370, 377; *Gereboff v. Home Indemnity Co.* (R.I. 1978), 383

A.2d 1024, 1026 n.1.) Thus, Continental's policy of insurance in the case at bar is characteristic of a "claims made" policy, with the additional term allowing a claim to be reported within 60 days of the time the policy period expires. Plaintiff does not deny that the terms of the contract mean anything else, and therefore, these terms are unambiguous. As such, the policy will be enforced according to the clear and precise terms the parties contracted for. *Weiss v. Bituminous Casualty Corp.* (1974), 59 Ill. 2d 165, 170-71, 319 N.E.2d 491; *Cobbins v. General Accident Fire & Life Assurance Corp.* (1972), 53 Ill. 2d 285, 294, 290 N.E.2d 873.

It would appear that plaintiff is foreclosed from pressing his claim that Continental owes him coverage, since the Benton suit was not filed and Continental did not receive notification thereof until more than three years after the effective cancellation date. However, plaintiff claims that since Continental failed to defend the Benton suit on his behalf under a reservation of rights, and failed to file a declaratory judgment action in order to determine coverage, Continental is estopped from denying liability under the policy.

Plaintiff relies on the line of well-known cases which describe the duty of an insurer to defend as being broader than the duty to pay and which hold the duty to defend to arise when a complaint against a putative insured sets forth facts which would potentially be covered by the policy. (See, *e.g., Thornton v. Paul* (1978), 74 Ill. 2d 132, 144, 384 N.E.2d 335; *Reis v. Aetna Casualty & Surety Co.* (1978), 69 Ill. App. 3d 777, 782-83, 387 N.E.2d 700; *Aetna Casualty & Surety Co. v. Coronet Insurance Co.* (1976), 44 Ill. App. 3d 744, 748, 358 N.E.2d 914; *Elas v. State Farm Mutual Automobile Insurance Co.* (1976), 39 Ill. App. 3d 944, 947, 352 N.E.2d 60; *Fragman Construction Co. v. Preston Construction Co.* (1971), 1 Ill. App. 3d 1002, 1005, 274 N.E.2d 614, *appeal denied* (1972), 49 Ill. 2d 575.) This court has explained the duty to defend and the ramifications thereof as follows:

> "[I]n Illinois, the insurer is obligated to defend an action brought against a putative insured where the complaint in that action sets forth a situation which would potentially be covered by the policy. Unless the complaint alleges facts which, if true, would exclude coverage, the potentiality of coverage is present and the insurer has a duty to defend. Underlying this rule is the principle that the duty to defend is broader than the duty to pay. If in a case there is potential coverage but the insurer believes that it has a valid exclusionary coverage defense then the insurer must: (1) secure a declaratory judgment of its rights while defending the potential insured under a reservation of rights, or (2) defend the potential insured under a reservation of rights and adjudicate its coverage in a supplemental suit. (*Country Mutual Insurance Co. v. Murray*, 97 Ill. App. 2d 61,

73, 239 N.E.2d 498, 505.) In such a case, where the insurer fails to take either course of action, its failure to defend is unjustified and in a subsequent action by the insured against the insurer, it will be estopped from raising exclusionary defenses." *Aetna Casualty & Surety Co. v. Coronet Insurance Co.*, 44 Ill. App. 3d 744, 748.

Plaintiff contends that the complaint in the Benton suit alleged facts indicative of potential coverage under the policy because it charged him with certain negligent acts or omissions in the performance of his professional architectural services between December 1967 and August 1973. Citing the above-quoted provision of the policy entitled "Coverage," he opines that at the very least potential coverage exists under the policy. He charges Continental with looking beyond the four corners of the complaint to information within its own knowledge to determine that plaintiff had not given notice of the claim within the requisite time period. In effect, plaintiff urges us to read out of the coverage provision the time restrictions regarding the filing and reporting of claims. This cannot be done.

■■ It is clear that an insurance contract must be construed as a whole (*Chicago Terminal Clearance, Inc. v. St. Paul Fire & Marine Insurance Co.* (7th Cir. 1969), 407 F.2d 552, 553; *Weiss v. Bituminous Casualty Corp.* (1974), 59 Ill. 2d 165, 171), giving effect to every part thereof as far as possible. (*State Security Insurance Co. v. Goodman* (1972), 6 Ill. App. 3d 1008, 1012, 286 N.E.2d 374.) The language of the time restrictions refers directly to the errors, omissions and negligent acts which are set forth in the coverage section and both provisions must be read together.

"III   Place and Time of Error, Omission or Negligent Act

* * *

(b)  Time
The *insurance* afforded by this policy *applies to errors, omissions or negligent acts* which occur on or after the date stated in item 6 of the declarations (the effective date of the first policy issued and continuously renewed by the Company) *provided that* claim therefor is first made against the insured during this policy period and reported in writing to the Company during this policy period or within 60 days after the expiration of this policy period." (Emphasis added.)

These time qualifications control the coverage provision; they state there will be no coverage unless they are complied with. These restrictions are not exclusions as plaintiff argues. "An exclusion, in insurance parlance, serves the purpose of taking out persons or events otherwise included within the defined scope of coverage. [Citation.]." (*Hartford Accident & Indemnity Co. v. Case Foundation Co.* (1973), 10 Ill. App. 3d 115, 124, 294

N.E.2d 7.) The time clause was neither placed under the "exclusions" section of the policy, nor reads like nor was intended, by its clear language, to be an exclusion from coverage. It relates directly to the coverage afforded under the policy. Plaintiff would excise the time clause from the contract, thereby allowing any insured who once owned such a policy to assert coverage no matter when it notified the insurer of such a claim. However, we do not believe the allegation of a situation which technically falls under the error, omission, or negligent act definition of coverage is all that is needed to show potentiality of coverage under the policy at issue here. The insured must notify the insurer of such a claim within the time constraints listed in the policy or there is no coverage for the acts, omissions or negligent acts of the insured, no matter when they occurred. Plaintiff did not so notify Continental here.

■■ It is clear that the Benton complaint did not allege a situation which would be potentially covered under the Continental policy. There was no coverage for plaintiff's alleged errors, omissions or negligent acts committed between December 1967 and August 1973, because such claims were not presented to Continental prior to the expiration of the policy or within 60 days thereafter. Since no potential coverage existed, Continental was under no duty to defend plaintiff and was not estopped from claiming no liability under the policy.

Accordingly, the judgment of the circuit court of Franklin County is reversed and the case is remanded to the trial court with directions to enter an order granting Continental's motion for summary judgment and denying plaintiff's motion for summary judgment.

Reversed and remanded with directions.

KARNS and SPOMER, JJ., concur.