CATERPILLAR, INC., *et al.*, Plaintiffs-Appellants, v. AETNA CASUALTY AND SURETY COMPANY *et al.*, Defendants (AIU Insurance Company *et al.*, Defendants-Appellees).

First District (6th Division)   No. 1—95—0816

Opinion filed July 31, 1996.

Anderson, Kill, Olick & Oshinsky and Kevin M. Forde, Ltd., both of Chicago (Eugene R. Anderson, Michael R. Magaril, Kevin M. Forde, and Mary Anne Mason, of counsel), for appellants.

William M. Cohn, of Law Offices of William M. Cohn, of Chicago, and Paul R. Koepff, Thomas G. Carruthers, and Bonnie L. Hobbs, all of O'Melveny & Meyers, of New York, New York, for appellee Insurance Company of North America.

Carlos Del Carpio and Matthew J. Fink, both of Bollinger, Ruberry & Garvey, of Chicago, for appellee International Insurance Co.

James K. Horstman, Barry L. Kroll, Anthony P. Katauskas, David E. Neumeister, and Lloyd E. Williams, Jr., all of Williams & Montgomery, Ltd., of Chicago, for appellee Home Insurance Co.

Clausen Miller, P.C., of Chicago (Margaret J. Orbon, Edward M. Kay, and Brenda D. McNamara, of counsel), for other appellees.

JUSTICE EGAN delivered the opinion of the court:

The plaintiffs, Caterpillar, Inc. (Caterpillar), and Solar Turbines Incorporated (STI), brought this 25-count action for a declaratory judgment seeking a determination of their rights under various comprehensive general liability (CGL) and excess insurance policies issued by the defendants. The defendants have denied coverage for certain liabilities incurred by the plaintiffs to pay for environmental damage and cleanup at various properties and waste sites throughout the United States.

The trial judge entered summary judgment in favor of the defendant Insurance Company of North America (INA) as to counts IV and IX of the complaint, each of which concerned toxic waste cleanup at sites in California.[1] The trial judge relied on the fact that Caterpillar, which entered into the contracts for insurance at issue, did not own or otherwise have any connection to these sites during the effective policy periods. That connection came later, when Caterpillar purchased assets which had connections to the sites. The trial judge ruled that these "after-acquired" assets were not insured under the policies. The plaintiffs contend questions of fact concerning the proper interpretation of the "named insured" clause under the policies precluded summary judgment.

■ Our review of an order granting summary judgment is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992). Summary judgment is appropriate only when the pleadings, together with any depositions, admissions, or affidavits on file demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1992); *La Salle National Bank v. Skidmore, Owings & Merrill*, 262 Ill. App. 3d 899, 902, 635 N.E.2d 564 (1994). We construe all reasonable inferences to be drawn from the facts in a light most favorable to the nonmoving party. *La Salle National Bank*, 262 Ill. App. 3d at 902.

As noted, the plaintiffs are facing extensive liability for environmental cleanup at sites throughout the country and are defendants in underlying environmental litigation with various states. Insurance coverage for the costs of the investigation and cleanup at two of

---

[1]INA issued the CGL policies at issue. The remaining defendants are excess insurance carriers; their potential liabilities have yet to be determined. The plaintiffs, along with all of these remaining defendants, assured us at oral argument that they would file a stipulation to dismiss the remaining defendants from the case without prejudice (one of the defendants has been dismissed by stipulation). With that assurance, we address only the contentions of INA.

these, the Chatham Brothers Barrel Yard (the Chatham site) and STI's Harbor Drive facility (the Harbor Drive site), is the subject of this appeal. The defendant in the underlying Harbor Drive action is STI; the defendant in the underlying Chatham action is Caterpillar. Explanation of the issue in this case requires some factual background.

STI is a wholly owned subsidiary of Caterpillar. Around 1962, International Harvester acquired the assets of the Solar Aircraft Company (Solar Aircraft), which had been formed around 1927. International Harvester placed the assets of Solar Aircraft into its Solar Turbines International Division. On May 14, 1981, Caterpillar acquired the assets of the Solar Turbines International Division. On May 21, 1981, Caterpillar transferred these assets to STI.

The Chatham site, which is the subject of count IV of the plaintiffs' complaint, was operated in Escondido, California, between 1941 and 1981 "as a chemical and waste oil transportation recycling and disposal facility," as well as "a drum reclamation facility." The Chatham site "accepted, recycled, and disposed of industrial solvents and waste oil." The Chatham site is not owned by either plaintiff. However, Solar Aircraft, the assets of which are now apparently owned by STI, had sold waste materials to the Chatham site. Caterpillar has received "notice from the California Department of Toxic Substances seeking recovery of costs associated with the investigation and remediation of all of the environmental conditions at and around" the Chatham site.

STI owns and operates a "facility" at the Harbor Drive site, which is located in San Diego, California. The Harbor Drive site is the subject of count IX of the complaint. The Harbor Drive site was originally owned and operated by Solar Aircraft and has been in operation since as early as 1927. STI faces "liability for investigation and remediation of property damage to the environment, including damage to natural resources at and around the Harbor Drive site," which occurred as a result of the operation of the site.

The plaintiffs sought coverage from the defendant for their liabilities in these underlying actions under CGL policies issued to Caterpillar by INA with policy periods ranging from sometime in 1952 until April 1, 1981. After April 1, 1981, INA no longer insured the plaintiffs. All of these policies generally obligated the defendant to pay on behalf of Caterpillar all sums for liability it incurred due to personal injury or destruction of property which occurred during the policy periods. The parties do not dispute that the property damage in the underlying actions occurred during the policy periods. Rather, the defendant refused to cover the plaintiffs' liabilities because it

claims that neither STI nor Solar Aircraft was a "named insured" under any of the policies at issue. Furthermore, Caterpillar, the named insured, had no connection to the polluted sites during the relevant policy periods.

The term "named insured" is defined differently depending on whether the policy period began before or after January 1, 1970. With the exception of one policy, policies which began before January 1, 1970 (the pre-1970 policies), stated as follows:

> "The words 'named insured', wherever used in this policy, include any subsidiary, allied or affiliated company of Caterpillar Tractor Co. or its subsidiaries."

The remaining policy which began before January 1, 1970, defined named insured as

> "the organization designated in the declarations including any subsidiary company *** of such organization and any other company coming under its control and active management."

The policies which went into effect after January 1, 1970 (the post-1970 policies), contained different language in the definition of named insured:

> "(1) The Named Insured is the organization named in the declarations of this policy and includes:
>
> (a) any subsidiary company *** and any other company under their control and active management at the inception date of this policy;
>
> (b) new organizations acquired or activated by the Named Insured, during the policy period, through consolidation, merger with, purchase of the assets of, or assumption of control and active management of."

There is no dispute that Caterpillar is a named insured under all of the policies.

The plaintiffs conceded in the trial court, as well as in this court, that coverage for STI and hence any liability in the Harbor Drive action after 1970 is precluded by the express temporal limitations included in the post-1970 policies because Caterpillar did not acquire STI until May 1981, after the final INA policy period ended. Thus, STI is seeking coverage only under the pre-1970 policies for its liability in the Harbor Drive action. The plaintiffs contend that it is a reasonable interpretation of the pre-1970 policies that STI is covered for its liability in the Harbor Drive action because the pre-1970 policies do not include language limiting the named insured to subsidiaries owned at the inception date of the policy. Caterpillar, as the named defendant in the Chatham action, is seeking coverage under all of the policies because it is a named insured under all of the policies.

The defendant contended it has no obligation to cover any liabilities incurred by the plaintiffs in either the Harbor Drive action or the Chatham action. As to STI's liability in the Harbor Drive action, the defendant argued that a temporal limitation defined by the effective period of each policy is implicit in the pre-1970 policies and that overwhelming case authority supports its interpretation of the language in these policies. As to Caterpillar's liability in the Chatham action, the defendant argued that because Caterpillar's liability in the Chatham action was premised on the activity of Solar Aircraft in dumping at the Chatham site before Caterpillar acquired the assets of the Solar Turbines International Division and created STI, Caterpillar did not have any connection to the Chatham site during any of the policy periods, and the defendant was not obligated to cover the liability.

The trial judge agreed with the defendant's arguments, ruling that there was no "nexus between the insurance company, INA, and the after-acquired properties, whether they be by way of acquiring assets or by creation [or] an acquisition of independent corporations."

■ This case involves the meaning of language in contracts for insurance:

> "In construing an insurance policy, the court must ascertain the intent of the parties to the contract. *** To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy as a whole *** with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract ***. If the words in the policy are unambiguous, a court must afford them their *plain, ordinary, and popular meaning.* *** However, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous *** and will be construed in favor of the insured ***." (Emphasis in original.) *Outboard Marine*, 154 Ill. 2d at 108-09.

In construing the policies in this case, we will address the policies as they relate to the Harbor Drive action and the Chatham action separately.

■ The plaintiffs contend that the pre-1970 policies cover assets and subsidiaries, such as STI and the Harbor Drive site, acquired after the policy period in each ended. They contend that this is a reasonable interpretation of the named insured provision in those policies because those clauses do not limit the term "any subsidiary" to those owned at the inception date of the policy.

The plaintiffs have not cited any decisions by any reviewing court of any jurisdiction accepting such an argument. The appellate decisions they do cite do not address the precise issue before us. *E.g.,*

*Stonewall Insurance Co. v. Asbestos Claims Management Corp.*, 73 F.3d 1178 (2d Cir. 1995); *Trustees of Tufts University v. Commercial Union Insurance Co.*, 415 Mass. 844, 616 N.E.2d 68 (1993); *Garriot Crop Dusting Co. v. Superior Court*, 221 Cal. App. 3d 783, 270 Cal. Rptr. 678 (1990). The defendant, on the other hand, has offered three decisions supporting its argument that the named insured provisions in the pre-1970 CGL policies do not include entities acquired after the policy period ended: *Armstrong World Industries, Inc. v. Aetna Casualty & Surety Co.*, 45 Cal. App. 4th 1, 77-81, 52 Cal. Rptr. 2d 690, 724-27 (1996); *Cooper Cos. v. Transcontinental Insurance Co.*, 31 Cal. App. 4th 1094, 37 Cal. Rptr. 2d 508 (1995); and *Textron, Inc. v. Aetna Casualty & Surety Co.*, 638 A.2d 537 (R.I. 1994). No Illinois court of review of which we are aware has been presented with the issue involved here. Thus, we look to these decisions from other jurisdictions, particularly *Armstrong*, the only decision directly on point.

In *Armstrong*, an asbestos-related case, the California Court of Appeal interpreted a named insured provision which defined the insured as the primary company "and/or its subsidiary, associated, and affiliated companies or owned and controlled companies as now existing *or hereafter constituted.*" (Emphasis added.) *Armstrong*, 45 Cal. App. 4th at 79, 52 Cal. Rptr. 2d at 725. The court concluded that this provision did "not include a company acquired *** after the policy ended." *Armstrong*, 45 Cal. App. 4th at 79, 52 Cal. Rptr. at 726. The court held thus despite the presence of the language "or hereafter constituted," language which is not present in the pre-1970 policies in this case.

The court acknowledged that the phrase "or hereafter constituted" in the abstract could be construed to mean assets acquired after the policy period elapsed extending in perpetuity. The court stated, however, that when read in the context of the policy as a whole, particularly the policy period, the named insured provision was neither so broad, nor at all ambiguous. *Armstrong*, 45 Cal. App. 4th at 80 n.34, 52 Cal. Rptr. 2d at 726 n. 34. *Cf. Cooper*, 31 Cal. App. 4th at 315-22, 37 Cal. Rptr. 2d at 513-17 (finding similar language ambiguous, but holding that common sense and reasonable expectations of the insured excluded coverage for after-acquired assets). Specifically, the *Armstrong* court noted that the duration of the policy was an essential element of the policy:

> "Unless coverage has been triggered during the policy period, there is no coverage once the policy period has ended. Logically, then, neither is there a named insured once the policy period has ended. Thus, a corporate acquisition taking place after the policy has expired can have no retroactive effect on the identity of the

named insured during the policy period." *Armstrong*, 45 Cal. App. 4th at 80, 52 Cal. Rptr. 2d at 726.

Thus, the term "hereafter" is limited by the duration of the policy period. *Cf. Textron*, 638 A.2d at 540-41 (holding that effective dates of policy period defines limits of named insured).

Because the term "hereafter" did not affect the temporal limits of the named insured provision, the provision, as worded in *Armstrong*, is for all intents and purposes identical to those in the pre-1970 policies. We agree with the reasoning of the *Armstrong* court. See also *Total Waste Management Corp. v. Commercial Union Insurance Co.*, 857 F. Supp. 140, 146-49 (D.N.H. 1994). We believe that an interpretation of the named insured provisions in the pre-1970 policies which enables Caterpillar to forever expand the named insured covered by the policies would be contrary to the plain meaning of the policies as a whole. See *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 514 N.E.2d 150 (1987) (directing courts to interpret insurance policies by examining entire document and not focusing on isolated clauses).

■ The policies at issue here, as were those in *Armstrong*, are "occurrence" policies in which the insured is indemnified for acts or occurrences which take place during the policy period regardless of when the claim is made. *Stonewall Insurance*, 73 F.3d at 1192. Nonetheless, the policy period in each defines the time within which not only the occurrence must have happened, but within which the policy itself is effective. *Armstrong*, 45 Cal. App. 4th at 80, 52 Cal. Rptr. 2d at 726. Thus, as the *Armstrong* court recognized, once the policy period ends, there is no coverage for subsequent events; logically, then, a subsequent asset acquisition cannot resuscitate the named insured provision: the policy period is over and the identity of the named insured during the policy period is limited to that which existed during the period.

■ Nor does the interpretation of the phrase "any subsidiary," offered by the plaintiffs, strike us as a rational one, giving due regard to the risk undertaken by the defendant in entering into the contract for insurance. The plaintiffs define "any" as including "indefinitely" (see New Illustrated Webster's Dictionary of the English Language 45 (1992)), meaning, we presume, in perpetuity. As our courts have stressed, the touchstone in determining whether certain language is ambiguous is whether it is susceptible to more than one *reasonable* interpretation, *not* whether creative possibilities can be suggested. *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 620 N.E.2d 355 (1993). We note here the definition of "any" in Black's Law Dictionary 86 (5th ed. 1979): "Some; one out of many; an indefinite number. One indiscriminately of whatever kind or quantity."

Although we can conceive in the abstract that "any" could mean an indefinite number for an indefinite period of time, as suggested by the plaintiffs, such an interpretation defies common sense in the context of the underlying bargain in an insurance contract. We do not consider it reasonable to require an insurance company to be able to assess risk in perpetuity unless it has clearly stated that it has done so. The position the plaintiffs advocate would permit them to acquire an indefinite number of assets without regard to any risk of liability, secure in the knowledge that the defendant would assume, for no additional premium, those risks even though they occurred during a policy period which had long since lapsed. This is clearly unreasonable.

■ The plaintiffs contend, however, that the defendant was able to assess the risk presented by STI before Caterpillar purchased the Solar Turbines International Division in 1981 because the defendant sold insurance to International Harvester during the time that company operated the Solar Turbines International Division. This contention is simply irrelevant. As the defendant points out, "an insurer is deemed to insure against [only] the risks inherent in the business of the insured at the time the policy is issued." *Triple-X Chemical Laboratories v. Great American Insurance Co.*, 54 Ill. App. 3d 676, 679, 370 N.E.2d 70 (1977). We will not engraft knowledge of risk the defendant had with regard to its insuring of one party onto its independent and unrelated insuring of another party.

■ The plaintiffs pursue this point further, asserting that the defendant's opportunity to assess the risk presented by the acquisition of the Solar Turbines International Division was, in essence, made irrelevant by the defendant's proposed premium for a CGL policy which would have begun in April 1981. Before 1981, Caterpillar automatically renewed its insurance with the defendant. In 1981, Caterpillar accepted competitive bids from the defendant and from Employers Insurance of Wausau. Caterpillar informed both companies of its pending acquisition at the time. Nonetheless, the defendant offered a premium to insure the plaintiffs after April 1981 that was one-third lower than the premium it had charged for the previous policy period ending April 1980. Thus, argue the plaintiffs, the defendant's contention that it did not have an opportunity to assess the risk of the Solar Aircraft assets before April 1981 is "insupportable." We disagree.

The defendant's premiums in the years before 1981 could not have contemplated the risk presented by the Solar Aircraft assets because Caterpillar did not own those assets. The mere fact that the defendant's premium offer decreased in a competitive bidding

environment does not alter that fact. Before April 1981, Caterpillar had, in effect, granted the defendant a monopoly. By definition, monopoly power includes the power to control prices. *Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 101, 613 N.E.2d 1150 (1992). Therefore, the plaintiffs should not be surprised that the defendant charged higher premiums in a noncompetitive environment. Certainly, the subsequent competition-induced bid cannot be viewed as some indication that the defendant had assessed the risk of STI before it existed. In any event, our decision is dictated by the language of the policies actually sold by the defendant to Caterpillar, not by some theoretical supposition that because the defendant's premiums were too high before April 1981, it was insuring against some unknown risk.

■ The plaintiffs further contend that the defendant's amendment of the named insured provision in the post-1970 policies demonstrates the defendant's own belief that the pre-1970 policies were ambiguous. Because, however, we hold that the language in the pre-1970 policies is not ambiguous, we need not attempt to surmise the *possible* reasons the defendant may have had for changing the language in the subsequent provision. We do not think the changes effected any alteration in the meaning of the named insured provisions.

■ The plaintiffs also argue that the trial judge improperly relied on considerations of the potential for fraud he perceived inherent in the plaintiffs' interpretation of the named insured. They assert that there has been no allegation that Caterpillar purposely attempted to purchase assets at risk of environmental liability. Although we agree with the trial judge's assessment of the possibility for fraud under the plaintiffs' interpretation of the named insured clauses, we do not rely on this consideration in making our determination. Rather, we rely solely on the plain language of the named insured clauses. See *Werckenthein v. Bucher Petrochemical Co.*, 248 Ill. App. 3d 282, 287, 618 N.E.2d 902 (1993) (court may rely on any ground in the record to affirm summary judgment).

■ Finally, the plaintiffs argue that their interpretation of the pre-1970 policies is at least arguably reasonable because one of the other party defendants, National Union Fire Insurance Company, successfully advocated in another case the very position the plaintiffs do now. See *National Union Fire Insurance Co. v. Liberty Mutual Insurance Co.*, No. C—89—3973—DLJ, slip op. at 5-6 (N.D. Cal. February 25, 1991). We note that the reasoning in that decision has been widely criticized by subsequent trial courts. See *Total Waste Management*, 857 F. Supp. at 148-49 (citing cases). Furthermore, we are not

bound to defer to the reasoning of trial courts in this jurisdiction, let alone those of the federal courts in California. We have already concluded that based on the plain language of the policies, the plaintiffs' position is unreasonable. The mere fact that an insurer has made the argument, as well, does not render it otherwise.

We therefore conclude that STI is not covered for its liability in the Harbor Drive action under the pre-1970 policies.

■ We turn to the policies as they relate to Caterpillar's liability in the Chatham action. Caterpillar is attempting to obtain coverage under all of the INA policies for its potential liability in the Chatham action. The only basis for Caterpillar's liability in that action is the actions of Solar Aircraft in dumping waste at the Chatham site. The trial court ruled that because there was no nexus between Caterpillar and Solar Aircraft before the expiration of INA's policies, there was no coverage. We agree.

When International Harvester purchased Solar Aircraft, it placed those assets into its Solar Turbines International Division. Caterpillar purchased these assets in May 1981 and then created STI, into which it placed those assets, both after the final INA policy expired. Under this factual scenario, the same analysis that we applied to the pre-1970 policies as to STI in the Harbor Drive action precludes coverage for Caterpillar in the Chatham action under the pre-1970 and post-1970 policies. STI was not a subsidiary before the policies expired. An asset of STI polluted the Chatham site. Caterpillar concedes that STI is not a named insured under the post-1970 policies.

At oral argument, the plaintiffs asserted that had Caterpillar simply purchased the Solar Turbines International Division of International Harvester and retained it as an asset, rather than transferring it to its subsidiary, it would be covered. First, that is not what Caterpillar did; hence, the question is not before us. In any event, Caterpillar did not own this asset during any of the relevant policy periods. We have already held that this precludes coverage under the pre-1970 policies. Under section 1(b) of the post-1970 named insured provision quoted above, in order for coverage to pertain, an asset acquisition or merger must occur "during the policy period." That did not occur.

■ The plaintiffs raise a final issue with regard to the trial judge's entry of summary judgment on a group of 12 so-called "missing policies." According to the plaintiffs, the trial judge inadvertently included these policies in the judgment order.

We confess to some puzzlement about the plaintiffs' argument on this point. The plaintiffs' first amended complaint alleges that the de-

fendant sold liability policies to Caterpillar; that copies of these policies were filed as "exhibit 2" to the *original* complaint; and that the defendant possessed copies of the policies. The first amended complaint further states that "a listing of all policies at issue in this action *** is annexed hereto as exhibit 3." Finally, the first amended complaint states that it contained "exhibit 4," the affidavit of Joseph Negro, "which demonstrates that any insurance policy identified in exhibit 3 which was not also contained in exhibit 2 to the original complaint is not in Caterpillar's possession, custody, or control, despite the diligent efforts of Caterpillar to locate it."

Our review of the record reveals the following: (1) the original complaint is not contained in the record; (2) the exhibits which the plaintiffs allege are annexed to the first amended complaint are not so annexed, and the plaintiffs do not inform us where in the record we might find them; and (3) the plaintiffs apparently made no effort to request discovery of the defendant to locate the missing policies. Apparently, any such request for discovery would have been unavailing, because in the defendant's memorandum in support of its motion for summary judgment, it identifies most of the 12 missing policies by number but the policies remain "missing" nonetheless.

At the time he entered his order, the judge said that "INA is granted summary judgment for all of the policies involved in the motion." We have reviewed the record subsequent to the entry of summary judgment and have not discovered any instance where the plaintiffs informed the judge that his order had been overbroad. Although we acknowledge that in their response to the defendant's motion for summary judgment the plaintiffs argued the judgment should not be entered on missing policies, that argument encompassed but several sentences in a 31-page document. The plaintiffs did not assert this point at all in oral argument before the trial judge. *Cf. Home Insurance Co. v. Liberty Mutual Insurance Co.*, 266 Ill. App. 3d 1049, 1053, 641 N.E.2d 855 (1994) (a party must raise issues "forthrightly and directly" to trial judges).

Needless to say, the trial judge could pass on only what was before him. It was the plaintiffs who brought this action, which is an action to enforce insurance contracts. The plaintiffs had the burden of establishing the existence of the contracts and their terms. Their suit purportedly addresses specific contracts. If there are other insurance contracts between the parties which differ in their terms from the insurance contracts in issue pursuant to a *complaint brought by the plaintiffs*, again, needless to say, the judgment of the circuit court in this case would have no bearing on those contracts.

We note in passing, however, and repeat, that the plaintiffs never

sought discovery for the purpose of locating the missing policies, nor did the plaintiffs seek to explain why they did not have copies of the policies; nor did they seek to establish, by secondary evidence, the contents of any policy that would differ from the terms of the policies that were before the court. Indeed, in oral argument in this court, the plaintiffs conceded that they had no reason to believe the terms of the missing policies were any different from the terms of the policies which were before the judge. We cannot imagine that the judge intended that his order covered policies which were not before him. For these reasons, like the trial judge, we make no judgment concerning the missing policies.

The judgment of the circuit court is affirmed.

Affirmed.

ZWICK, P.J., and RAKOWSKI, J., concur.