**In the Matter of The CELOTEX CORPORATION, et al., Debtors.**

**The CELOTEX CORPORATION, et al., Plaintiff,**

v.

**AIU INSURANCE COMPANY, et al., Defendants.**

**Bankruptcy Nos. 90–10016–8B1, 90–10017–8B1.**

**Adv. No. 91–40.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 3, 1997.

978

Jeffrey W. Warren, Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, FL, for Debtor.

Plaintiffs' Counsel—(The following four law firms)

Charles P. Schropp, William R. Daniel, Schropp, Buell & Elligett, P.A., Tampa, FL, Nicholas J. Zoogman, Anderson, Kill & Olick, New York City, Stephen A. Madva, Montgomery McCracken Walker & Rhoads, Philadelphia, PA, Bruce Bishop, Willcox & Savage, Norfolk, VA, for plaintiffs.

George N. Wood, Vice President and General Counsel, Tampa, FL, for The Celotex Corporation.

Sara Kistler, Assistant United States Trustee, Tampa, FL.

John W. Kozyak, Kozyak Tropin Throckmorton & Humphreys, P.A., Miami, FL, for Asbestos Property Damage Claimants Committee.

Charles M. Tatelbaum, Johnson, Blakely, Pope, Boker, Ruppel & Burns, P.A., Clearwater, FL, for Unsecured Trade Creditors Committee.

William Knight Zewadski, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, for Unofficial Asbestos Health Claim Co–Defendants Committee.

H.C. Goplerud, Honigman Miller Schwartz and Cohn, Tampa, FL, for Asbestos Health Claimants Committee.

Sheldon S. Toll, Honigman Miller Schwartz & Cohn, Detroit, MI, for Asbestos Health Claimants Committee.

Daniel C. Sauls, John Flyger, Steptoe & Johnson Company, Washington, DC, for Highlands Insurance Co.; Old Republic Insurance Company.

Robert J. Bates, Jr., Maryann C. Hayes, Stanley V. Figura, Bates Meckler Bugler & Tilson, Chicago, IL, for Eric Reinsurance Company.

Deborah M. Paris, Paris & Associates, Tampa, FL, for Certain Underwriters at Lloyd's of London (Plaisted).

John A. Yanchunis, Blasingame Forizs & Smiljanich, St. Petersburg, FL, for Transportation Insurance Company, Continental Casualty Company, Columbia Casualty Company, Eric Reinsurance Company and Zurich American Insurance Company.

David C. McLauchlan, Andrew Kochanowski, Lord Bissell & Brook, Chicago, IL, for Certain Underwriters at Lloyd's of London.

Thomas B. Keegan, Robins, Kaplan, Miller & Ciresi, Chicago, IL, for Employers Mutual Casualty Company.

William Clearly, Mendes & Mount, New York City, for Barrett and London Market Companies.

Gregory J. Willis, Bart Billrough, Walton Lantaff Schroeder & Carson, Miami, FL, for Florida Insurance Guaranty Association, Inc.

W. Gray Dunlap, Jr., Tampa, FL, for Hartford Accident and Indemnity Company, First State Insurance Company and Twin City Fire Insurance Company.

Rolph Gilbertson, Zeele & Larson, Minneapolis, MN, for Employers Insurance of Wausau.

Margaret Jones, Grippo & Eldon, Chicago, IL, for American Insurance Company and National Surety Corporation.

Thomas B. Mimms, Jr., MacFarlane Ferguson, Tampa, FL, for American Home Assurance Company, AIU Insurance Company, Highlands Insurance Company, Old Republic Insurance Company, Granite State Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA., Employers Mutual Casualty Company, American Insurance Company, National Surety Company, St. Paul Surplus Lines Insurance Company.

Christine A. Nykiel, Jackson & Cambell, Washington, DC, for American Home Assurance Company, AIU Insurance Company, Granite State Insurance Company, Lexington Insurance Company, National Union Fire Insurance Company of Pittsburgh, PA.

Elizabeth G. Repaal, Harris Barrett, Mann & Dew, Tampa, FL, for Northbrook, as successor in interest to Allstate Insurance Company.

Mary A. Lau, Lau Lane Pieper Conley & McCreadie P.A., Tampa, FL, for Employers Insurance Company of Wausau.

Elizabeth B. Sandza, Cynthia T. Andreason, Leboeuf Lamb Greene & Macrea, Washington, DC, for Hudson Insurance Company and Gibraltar Casualty Company.

William S. Daskam, IV, Butler Burnette & Pappas, Tampa, FL, for Continental Insurance Company.

Rick Dalan, Clearwater, FL, for Royal Indemnity Company.

Jeffrey A. Aman, Aman & Lins, Tampa, FL, for Insurance Company of North America and California Union Insurance Company.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on for consideration upon cross Motions for Summary Judgment by Defendant, Northbrook,[1] and Debtor/Plaintiff (Debtor). This Court considered all arguments and evidence consistent with a ruling on a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) (holding the standard of proof in summary judgment rulings is the same as it would be at trial); *Celotex v. Catrett*, 477 U.S. 317, 323–35, 106 S.Ct. 2548, 2552–59, 91 L.Ed.2d 265 (1986) (discussing the appropriate burdens of proof and types of evidence to use in summary judgment decisions); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986) (detailing the elements of summary judgment analysis).

### INTRODUCTION

The cross Motions before the Court concern interpretation of the language of the Northbrook umbrella and Aetna primary insurance policies. The Aetna policy is Debtor's primary comprehensive general liability insurance coverage. Primary coverage will have to pay first for any occurrence covered by the policy. The Northbrook policy is an

---

1. Northbrook refers to "Allstate Insurance Company, as successor-in-interest to Northbrook Excess and Surplus Insurance Company, formerly known as Northbrook Insurance Company...." Northbrook's Motion for Summary Judgment, Doc. No. 3476.

umbrella liability policy. Umbrella policies are the next layer of coverage, and here serve a dual role. In general terms, where a primary policy contains coverage, an umbrella policy is an excess layer of insurance for the same occurrence. Where the primary policy does not contain coverage, an umbrella policy serves to fill in the coverage gaps of the primary insurance layer.[2]

■ The parties seek the Court's interpretation of three clauses of policy language; specifically, two clauses concerning occupational disease coverage found in the Aetna policy, and one clause concerning aggregate limits found in the Northbrook umbrella policy. Issues involving the interpretation of insurance coverage are determined under Illinois law. *See Celotex Corp. v. AIU Insurance Co., et al.,* 194 B.R. 668, 673 (Bankr. M.D.Fla.1996) (deciding choice of law for these and other policies). Illinois law requires Courts "[i]n construing contracts of insurance ... [to] examine the policy as a whole, giving effect, to the extent possible, to all contractual provisions." *O'Rourke v. Access Health, Inc.,* 282 Ill.App.3d 394, 218 Ill.Dec. 51, 57, 668 N.E.2d 214, 220 (1996); *see Caterpillar, Inc. v. Aetna Casualty & Surety Co.,* 282 Ill.App.3d 1065, 218 Ill.Dec. 320, 324, 668 N.E.2d 1152, 1156 (1996). Clear and unambiguous language must be interpreted according to its plain, ordinary, and popular sense or meaning. *O'Rourke,* 218 Ill.Dec. at 57, 668 N.E.2d at 220; *Consumers Construction Co. v. American Motorists Insurance Co.,* 118 Ill.App.2d 441, 254 N.E.2d 265, 270 (1969). When construing contracts of insurance, courts must not create ambiguity, or create a new contract, under the guise of construction. *O'Rourke,* 218 Ill.Dec. at 58, 668 N.E.2d at 221; *Consumers Construction,* 254 N.E.2d at 270.

■ The parties did not argue, nor does this Court find, that any of the clauses at issue are ambiguous.[3] Therefore, the Court must interpret the language in question according to its plain, ordinary, and popular meaning. The Court must look to the actual contract language, not the construction placed on the language by the parties. *Bunge Corp. v. Northern Trust Co.,* 252 Ill. App.3d 485, 191 Ill.Dec. 195, 201, 623 N.E.2d 785, 791 (1993); *see Bruder v. Country Mutual Insurance Co.,* 156 Ill.2d 179, 189 Ill. Dec. 387, 394, 620 N.E.2d 355, 362 (1993).

## OCCUPATIONAL DISEASE COVERAGE ISSUE

### *Policy Language*

The Northbrook umbrella policy contains a clause referred to in this litigation as Special Condition IV. Special Condition IV appears in the section of the Northbrook policy entitled "Conditions" and reads as follows:

IV. SPECIAL CONDITIONS APPLICABLE TO OCCUPATIONAL DISEASE

As regards Personal Injury (fatal or nonfatal) by occupational disease sustained by any employe [sic] of the Insured, this policy, while in force, is subject to the same warranties, terms and conditions (except as regards the premium, the amounts and limits of liability and the renewal agreement, if any) as are contained in or as may be added to the underlying insurances prior to the happening of an Occurrence for which claim is made hereunder.

Special Condition IV is the subject of an earlier ruling made by this Court on October 18, 1995, pursuant to **Fed.R.Bankr.P.** 7052; **Fed.R.Civ.P.** 52.[4] The prior ruling held, while Special Condition IV may have an expansive effect on Northbrook's coverage, or a narrowing effect, the condition cannot be used to exclude coverage, i.e., it cannot incorporate the Aetna policy exclusions into the Northbrook policy. Nor can the condition act as an exclusion. This Court held Illinois law requires exclusions to be specifically ex-

---

**2.** **8A John Alan Appleman & Jean Appleman,** **Insurance Law & Practice,** § 4909.85 (1981).

**3.** *See Bruder v. Country Mutual Insurance Co.,* 156 Ill.2d 179, 189 Ill.Dec. 387, 394, 620 N.E.2d 355, 362 (1993). The *Bruder* court defines the test for ambiguity of a term in an insurance

policy as "whether the relevant portion is subject to more than one reasonable interpretation, not whether creative possibilities can be suggested. Reasonableness is the key." *Id.*

**4.** Tr. at 78–79 (Oct. 18, 1995). For a description of the interaction of the excess and primary policies at issue, see Tr. at 75–76.

pressed. The Aetna and Northbrook policies each contain exclusions as well as terms and conditions. Special Condition IV addresses terms and conditions, and could have addressed exclusions, but it rather makes no mention of exclusions. Therefore, the Court held Special Condition IV does not act as an exclusion of coverage, nor does it incorporate by reference the exclusions found in the primary policy.

Based on the Court's prior ruling, the parties ask the Court to clarify whether two clauses in the Aetna policy are either (1) exclusions, or (2) conditions or terms. If the clauses are exclusions, the language is not incorporated as part of the Northbrook policy. Conversely, clauses deemed terms or conditions would be incorporated. The clauses at issue in the Aetna policy read as follows: [5]

The first clause appears in the Exclusions section:

This Policy *Does Not Apply:*
(e) under Coverage B, to bodily injury by disease *unless prior to thirty-six months after the end of the policy period written claim is made or suit is brought* against the insured for damages because of such injury or death resulting therefrom;

The second clause is not in the Exclusions section:

IV. Application of Policy
This policy applies only to injury (1) by accident occurring during the policy period, or (2) by disease caused or aggravated by exposure of which the last day of the last exposure, in the employment of the insured, to conditions causing the disease occurs during the policy period.

**5.** There is no dispute as to the language at issue in the policies. *See* Tr. at 5, 11–12 (Dec. 18, 1995).

**6.** Claims made insurance policies offer coverage for claims made during the policy period, as opposed to the more traditional occurrence based policies which cover events which occur during a policy period without restrictions on when losses are incurred. **Robert E. Keeton & Alan I. Widiss, Insurance L.: A Guide to Fundamental Principles, Legal Doctrines & Com. Practice,** § 5.10(d), at 594, 598 (West 1988). Claims made policies evolved in the professional liability coverage industry, such as the policy at issue in

*Analysis*

In *Graman v. Continental Casualty Company,* 87 Ill.App.3d 896, 42 Ill.Dec. 772, 409 N.E.2d 387 (1980), an Illinois court faced similar issues regarding language in a "claims-made" policy.[6] *Id.* at 775, 409 N.E.2d at 390. The Court interpreted the language in question to be a term or condition of coverage, rather than an exclusion. *Id.* The clause interpreted reads as follows:

(b) Time

The insurance afforded by this policy applies to errors, omissions or negligent acts which occur on or after the date stated in item 6 of the declarations (the effective date of the first policy issued and continuously renewed by the Company) provided that claim therefor [sic] is first made against the insured *during this policy period and reported in writing to the Company during this policy period or within 60 days after the expiration of this policy period.*

*Id.* at 774, 409 N.E.2d at 389 (emphasis added).[7]

The clause insured the plaintiff against claims made against plaintiff, an architect, during the construction of a new school building. *Id.* There were difficulties with the roof of the structure, culminating in a lawsuit filed by the school district four years later. *Id.* at 774, 409 N.E.2d at 389. The *Graman* court interpreted the clause according to its plain language to require suit must have been filed, and a written notice given, during the policy period or within 60 days of the end of the policy. *Id.* at 777, 409 N.E.2d at 392. The *Graman* court noted the policy was

*Graman,* and are spreading to other areas of liability insurance. *Id.* at 598–99. The time limit on coverage allows insureds to purchase claims made policies for lower premiums than those charged for occurrence based policies. *Id.* at 598. *See* 11 **Couch, et al., Couch on Insurance** § 44:1 (discussing the difference between claims made and occurrence based coverage).

**7.** The Court notes while the policy language before the *Graman* court is most similar to the first clause at issue in this case, the interpretive reasoning is equally applicable to both clauses at issue.

"characteristic of a 'claims made' policy, with the additional term allowing a claim to be reported within 60 days of the time the policy period expires." *Id.* at 775, 409 N.E.2d at 390. Claims made policies offer coverage only for claims made during the policy period. *Id.*

In determining the "restrictions are not exclusions," *id.* at 777, 409 N.E.2d at 392, the *Graman* court states " '[a]n exclusion, in insurance parlance, serves the purpose of taking out persons or events otherwise included within the defined scope of coverage.' " *Id.* (quoting *Hartford Accident Co. v. Case Foundation Co.,* 10 Ill.App.3d 115, 294 N.E.2d 7, 14 (1973)). The court reasoned the clause did not appear in the policy's "exclusions" section, did not read like an exclusion, nor did the clear language intend it to be an exclusion. *Id.* The *Graman* court concluded "[t]he insured must notify the insurer of such a claim within the time constraints listed in the policy or there is no coverage for the acts, omissions or negligent acts of the insured, no matter when they occurred." *Id.* The clause herein is not an exclusion, but relates directly to coverage, requiring an insured to meet certain time limits as a condition prior to coverage.

There are several distinctions between the *Graman* facts and the facts at issue in this case. Unlike the claims made policy in *Graman,* the Aetna policy is an occurrence based policy.[8] Further, the clauses at issue in this case are not identical to those before the *Graman* court, although the *Graman* policy language is most similar to the first clause in the Aetna policy.[9] Notwithstanding these distinctions, this Court finds the reasoning in

*Graman* instructive when evaluating the nature of both of these clauses.

The first clause, which is most analogous to the language interpreted in *Graman,* further defines coverage as including only those events about which a "written claim is made or suit is brought" within thirty-six (36) months after the policy period. As in *Graman,* this clause appears to directly relate to coverage—defining what is included rather than carving out an exception. However, this clause appears in the "exclusions" section of the Aetna policy, while the *Graman* court specifically commented the clause in that case did not appear in an "exclusions" section. Further, Debtor argues this type of time constraint parameter is more consistent with a claims-made policy, such as the one the *Graman* court interpreted, than it is with an occurrence based policy, such as the Aetna policy in this case. While similar language in the *Graman* claims made policy may have defined coverage, the Debtor argues this language excludes coverage that would otherwise be available under the occurrence based Aetna policy. The Debtor urges this Court to find the first clause is an exclusion.

The Court appreciates the distinctions between the *Graman* facts and the facts in this case. Nevertheless, the Court finds the first clause in question is a condition, not an exclusion. Exclusions generally serve to carve out specific events or hazards from a universe of covered events,[10] while conditions of the type before the Court generally require the performance of an act in order to permit a claim to be paid.[11] For example, notice requirements are usually a

---

8. *See* supra note 6; Tr. at 110–12 (Oct. 18, 1995).

9. However, the first clause discussed above is very similar to the clause interpreted in *Graman.*

10. *See* **Robert E. Keeton & Alan I. Widiss, Insurance L.: A Guide to Fundamental Principles, Legal Doctrines & Com. Practice,** § 5.5(a)(3).

11. See, e.g., *Ideal Mut. Ins. Co. v. Lucas,* 593 F.Supp. 466, 468 (N.D.Ga.1983), where a Georgia district court drew the distinction between exclusions and conditions as follows:
 While there is no talismanic test to determine whether a provision in an insurance contract is a

condition or exclusion, courts generally have found that exclusions are designed to limit the risks for which the insurer will provide coverage. In other words, the word "exclusions" signifies subject matter or circumstances in which the insurance company will not assume liability for a specific risk or hazard that otherwise would be included within the general scope of the policy. Conversely, a condition is a provision inserted in the contract for the insurer's benefit that requires fulfillment of certain prerequisites before benefits will be released to the beneficiary under the contract.

condition to have a claim paid. Therefore, a provision in an insurance policy requiring prompt or timely notice conditions payment on a certain act—giving notice—by the insured, or sometimes a third party.[12]

In the first clause at issue, the Aetna policy language does not carve out any specific event or hazard. The language simply conditions payment of a claim on a certain act—filing suit or a written claim within thirty-six (36) months of the end of the policy period. This language requires an act to perfect coverage, which is consistent with a condition, not an exclusion. This clause is a condition for coverage under the Aetna policy. The Court finds the first clause is incorporated by reference into the Northbrook umbrella policy.

■ The second clause defines coverage to include only those events that occur during the policy period, or ultimately manifest from something that occurs during the policy period. This provision is consistent with an occurrence based policy. This clause is a term or condition for coverage under the Aetna policy, not an exclusion. The Court finds the second clause is incorporated by reference into the Northbrook umbrella policy.

■ Exclusions carve out events or individuals that would otherwise be covered in an insurance policy. Exclusions must be "clear, definite and explicit" before they will be used to deny coverage. *O'Rourke*, 218 Ill.Dec. at 57, 668 N.E.2d at 220. If there are any doubts as to these criteria, they are to be resolved in favor of coverage. *Id.* In the Aetna policy, the language at issue does not carve out otherwise covered individuals or events. Both clauses *define* the time period required for events to be covered under the policy, and provide a term or condition based on these time restrictions. Therefore, the Court finds both clauses are incorporated by

reference into the Northbrook umbrella policy.

## AGGREGATE LIMITS ISSUE

■ In the Umbrella Liability Policy issued by Northbrook, there is a clause containing language discussing the limits of liability as to Products Liability and Personal Injury by occupational disease which is the subject of debate between the parties. The clause appears in the Limit of Liability section of the policy and reads in relevant part as follows:

II. Limit of Liability

The Company shall only be liable for the Ultimate Net Loss in excess of either.... and then only up to a further sum as stated in Item 2(a) of the Declarations in all in respect of each Occurrence-subject to a limit as stated in Item 2(b) of the Declarations in the aggregate

 A. for each annual period during the currency of this policy, but

 B. *separately in respect of Products Liability and in respect of Personal Injury (fatal or nonfatal) by occupational disease sustained by any employes [sic] of the Insured.*

The limit referred to in Item 2(b) is the aggregate limit, and is ten million dollars under this policy.[13] The parties agree the only dispute is the interpretation of the underlined sentence.[14] The Debtor urges the Court to find separate aggregate limits for Products Liability and Personal Injury by occupational disease. The Defendants urge the Court to find a single aggregate limit for both categories.

No cases are offered by the parties, nor has this Court found any cases, in which an Illinois court interpreted language similar to the clause at issue.[15] Therefore, this Court

---

12. See 7 **Couch, et al., Couch on Insurance** § 36:48, for a discussion of conditions precedent to recovery which must be met after the insured incurs a loss.

13. *Id.*

14. Tr. at 71–2 (Dec. 18, 1995).

15. The Illinois courts address issues involving policy limits and interpretation of policy lan-

guage in automobile insurance cases. See, e.g., *Stearns v. Millers Mut. Ins. Assoc.,* 278 Ill.App.3d 893, 215 Ill.Dec. 506, 508–09, 663 N.E.2d 517, 519–20 (1996), interpreting the choice between applying per-person versus per-occurrence policy limits in an automobile coverage case. This Court did not find the reasoning in these types of cases helpful because the insurance policies in question are too dissimilar.

must use the general principles of contract interpretation which require the Court to determine the plain, ordinary and popular meaning of this language. *O'Rourke,* 218 Ill.Dec. at 57, 668 N.E.2d at 220; *Consumers Construction,* 254 N.E.2d at 270. The Court examines the language itself, and considers the interpretations offered by the parties.

Debtor argues the language in question sets two separate aggregate limits—one for Products Liability and one for Personal Injury from Occupational Disease—10 million dollars each. Essentially, the Debtor breaks the sentence down as follows: "separately [a separate individual limit] in respect of [1st category] Products Liability and in respect of [2nd category] Personal Injury (fatal or nonfatal) by occupational disease...." Under Debtor's interpretation, there would be ten (10) million dollars of coverage available for each category.

Defendant offers a different interpretation of this clause. The Defendant breaks the sentence down as follows: "separately [apart from the other policy limits] in respect of [both] Products Liability and in respect of Personal Injury (fatal or nonfatal) by occupational disease...." Under Defendant's interpretation, there would be ten (10) million dollars of coverage available for both categories combined. The parties ask this Court to determine which interpretation is correct.

The Court finds the interpretation supported by Debtor is the more reasonable reading of this clause. The language at issue intends to separate these two distinct categories—products liability and personal injury from occupational disease—to afford an annual limit for each category, not for both. The language states the limits are *separately in respect of* products liability *and in respect of* personal injury—to read the language as lumping these two categories together strains the reasonableness of interpretation and is not supported by the language of the policy. *See O'Rourke,* 218 Ill.Dec. at 58, 668 N.E.2d at 221. The Court finds the reasonable interpretation of this language results in a total ten (10) million dollars of coverage each for products liability and personal injury from occupational disease.

## CONCLUSION

This Court finds the language in the two Aetna policy clauses at issue concerning occupational disease are not exclusions, and are incorporated by reference into the Northbrook umbrella policy. The Court finds the aggregate limits set in the Northbrook umbrella policy contemplate separate ten (10) million dollar annual limits each for products liability and personal injury from occupational disease. Accordingly, it is

ORDERED, ADJUDGED AND DECREED the Court grants the Debtor's Motion for Summary Judgment in part as follows: there are separate annual aggregate limits set in the Aetna policy of ten (10) million dollars each for products liability and personal injury from occupational disease. The Court denies the remainder of the Debtor's Motion. It is further

ORDERED, ADJUDGED AND DECREED the Court grants the Defendant's Motion for Summary Judgment in part as follows: the clauses at issue under the Aetna occupational disease policy language are not exclusions and are incorporated by reference into the Northbrook umbrella policy. The Court denies the remainder of the Defendant's Motion.