**UNITED STATES FIRE INSURANCE COMPANY, Plaintiff,**

v.

**BARKER CAR RENTAL d/b/a National Car Rental, the Estate of Bade Alkhuaini, the Estate of Barry L. Lawrence, Verna L. Lawrence, Kimberly A. Creech, David J. Davies, Transamerica Insurance Group, and Old Dominion Insurance Company, Defendants.**

**No. IP–94 1336–C B/S.**

United States District Court, S.D. Indiana, Indianapolis Division.

Oct. 4, 1996.

Stephen J. Peters, Stewart & Irwin, Indianapolis, IN, for Plaintiff.

David T. Kasper, Locke Reynolds Boyd & Weisell, Indianapolis, IN, Mark C. Ladendorf, Yosha Ladendorf Krahulic & Weddle, Indianapolis, IN, James L. Petersen, Ice Miller Donadio & Ryan, Indianapolis, IN, R.D. Zink, Henderson Daily Withrow & Devoe, Indianapolis, IN, for Defendants.

## ENTRY GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART AND DEFENDANTS' CROSS–MOTIONS FOR SUMMARY JUDGMENT IN PART

BARKER, Chief Judge.

Plaintiff, United States Fire Insurance Company, filed a complaint for interpleader and declaratory judgment on its liability under three insurance policies issued to Barker Car Rental d/b/a National Car Rental. It then filed this motion for summary judgment. Defendants Transamerica Insurance Group, Verna Lawrence and the Estate of Barry Lawrence filed cross-motions for summary judgment. For the reasons discussed below, Plaintiff's motion for summary judgment is granted on the question of its liability under the Business Auto Policy and the Second Excess Insurance Policy. Defendants' motions are granted to the extent discussed on the question of liability under the First Excess Insurance Policy. In addition, Plaintiff's motion that those actions that implicate the interpled Business Auto Policy monies deposited in this court and that are presently stayed, remain stayed until the issues raised in this action are resolved, is granted.

## I. STATEMENT OF FACTS

The facts in this case are largely undisputed. Plaintiff, United States Fire Insurance Company ("U.S. Fire"), is an insurance corporation, organized under the laws of New York, with its principal place of business in New Jersey. Stipulations ¶ 1. It is authorized to issue policies in Illinois and West Virginia, as well as to do business in Indiana. *Id.* Barker Car Rental, d/b/a National Car

Rental ("Barker"), is a corporation organized under the laws of Delaware, with its principal place of business in Illinois. *Id.* at ¶ 2. Bader Alkhuaini ("Alkhuaini") was a Kuwaiti subject and citizen residing in West Virginia. *Id.* at ¶ 3. His driver's license was issued by Kentucky. *Id.* at ¶ 15.

On November 24, 1993, Alkhuaini rented a car from Barker in West Virginia. *Id.* at ¶ 13. The car rented to Alkhuaini was licensed in Illinois. *Id.*

On November 26, 1993, Alkhuaini was driving in Brown County, Indiana, when he was in a car accident with Barry and Verna Lawrence, Kimberly Creech ("Creech"), and David Davies ("Davies"). *Id.* at ¶ 17. Alkhuaini and Barry Lawrence died as a result of the accident. *Id.* at ¶ 18.

An estate was established on behalf of Alkhuaini in Brown County, Indiana for purposes solely related to this litigation. Stipulations ¶ 3. Defendant Verna Lawrence ("Lawrence") is an Indiana citizen, and the Estate of Barry Lawrence was established in Delaware County, Indiana, also solely for purposes of this litigation. *Id.* at ¶¶ 4–5. The Lawrences' insurance company, Transamerica Insurance Group ("Transamerica"), is another defendant in this action. *Id.* at ¶ 6. Defendants Creech and Davies were dismissed from this lawsuit. *Id.* at ¶ 8–9. However, Creech's insurance company, Old Dominion Insurance Group, remains in this action, with a subrogated interest for seven thousand seven hundred seven dollars ($7,707.00) already paid to Creech as a result of damage to her car from the Alkhuaini accident. Stipulations ¶ 22. Old Dominion has agreed to stay prosecution of its cross-claims until final resolution of this action. *Id.*

U.S. Fire issued three insurance policies implicated in this litigation: a Business Auto Policy, a First Excess Policy and a Second Excess Policy. Stipulations ¶¶ 10–12. Barker is the named insured on all three policies. *Id.* at ¶ 25. All three policies were issued on November 1, 1993 for a period extending through November 1, 1994. *Id.* at ¶¶ 10–12.

U.S. Fire filed this interpleader and declaratory judgment action to determine its obligations under these three insurance policies. All of the parties stipulated that, under the Business Auto Policy, the liability limits are twenty-five thousand dollars ($25,000.00) per person, fifty thousand dollars ($50,000.00) per occurrence, and ten thousand dollars ($10,000.00) for property damage. Stipulations ¶ 19. The parties also agreed that U.S. Fire, prior to initiating this action, had already paid a total of four thousand six hundred five dollars and thirty-one cents ($4,605.31) under the property damage limits of the Business Auto Policy. *Id.* at ¶ 20. The parties acknowledge that U.S. Fire deposited into this court the sum of fifty-five thousand three hundred twenty-four dollars and sixty-nine cents ($55,324.69), which is the remaining liability and property damage limit available under the Business Auto Policy. *Id.* at ¶ 21. Plaintiff and Defendants Lawrence, Estate of Lawrence and Transamerica have filed motions and cross-motions for summary judgment on the declaratory judgment action.

None of the parties disputes that this court has jurisdiction over, and is an appropriate venue for, the claims at issue in this case. 28 U.S.C. § 2201; 28 U.S.C. § 1335(a); 28 U.S.C. 1367(a); *Nationwide Ins. v. Zavalis,* 52 F.3d 689, 691–92 (7th Cir.1995); *General Railway Signal Co. v. Corcoran,* 921 F.2d 700, 703 (7th Cir.1991). Because these claims are indeed properly before this court, we turn to the issues raised by the parties.

## II. ANALYSIS

### A. *Choice of Law*

■ All of the parties agree that because Indiana is the forum state for this dispute, Indiana's choice of law rules govern. *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.,* 50 F.3d 476, 478 (7th Cir.1995). The parties also agree that, for choice of law purposes, Indiana treats insurance contract questions as those of contract, regardless of whether the cause of the underlying dispute rests in tort. *American Family Mut. Ins. Co. v. Williams,* 839 F.Supp. 579, 583 (S.D.Ind.1993); *Travelers Ins. Cos. v. Rogers,* 579 N.E.2d 1328, 1330 (Ind.Ct.App.1991).

Accordingly, all parties acknowledge that the "most significant contacts" test controls the choice of law question presently before this court. *American Family*, 839 F.Supp. at 582; *Travelers*, 579 N.E.2d at 1330-31.

■ Not surprisingly, the parties agree on little else. Plaintiff maintains that, applying the most significant contacts test, Illinois law applies generally in this action. It maintains that Illinois has the most significant contacts with this action because (1) Barker's principal place of business is in Illinois, (2) the three insurance policies were negotiated by and delivered to Barker in Illinois, and (3) the rented vehicle was licensed in Illinois and carried Illinois plates. Defendants, on the other hand, maintain that the most significant contacts test would direct this court to apply West Virginia law. They maintain that West Virginia is the state where the rental agreements were executed by Barker and Alkhuaini, and that this is the correct point upon which this court should fix its choice of law inquiry. Defendants also point out that Barker does business in West Virginia and that Alkhuaini was domiciled in West Virginia at the time he rented the car from Barker.[1]

This court will apply Illinois law in this action.

> The determination of which state law applies is aided by consideration of several factors: the place of contracting, the place of negotiation, the place of performance, the location of the subject matter, and the parties' place of business. In conflict of law cases involving the interpretation of insurance contracts, the law of the state where the contract is executed controls.

*Pennington v. American Family Ins. Group*, 626 N.E.2d 461, 465 (Ind.Ct.App.1993) (citation omitted); *see also Eby v. York–Div., Borg–Warner*, 455 N.E.2d 623, 626 (Ind.Ct. App.1983) (listing factors).

U.S. Fire's liability in this case arises not from the rental agreement entered into by Alkhuaini and Barker, but from the insurance contracts between it and Barker. Barker is the named insured on all three of the insurance policies, with its principal place of business in Illinois. Stipulations ¶¶ 2, 25. All three policies were effective November 1, 1993 through November 1, 1994, Stipulations ¶¶ 10–12, thus, the policies existed before Alkhuaini ever walked into Barker's West Virginia rental office on November 24, 1993. Although it is true that without the rental agreement, U.S. Fire would have no link to Alkhuaini, it is the insurance contracts negotiated between U.S. Fire and Barker that form the basis of U.S. Fire's liability in this case—not the rental agreement. *Cf. Pafco Gen. Ins. Co. v. Providence Washington Ins. Co.*, 587 N.E.2d 728, 729 n. 1 (Ind.Ct.App. 1992) ("This case deals with more than the enforcement of the rental contract. [The insurance company] is litigating its responsibility as to insurance coverage and is not asserting any rights under the rental contract."). These contracts were negotiated and delivered in Illinois. *See* Exs. A, B, C; Anderson Aff. at ¶¶ 3–5. Accordingly, this court will apply Illinois law in this case.

### B. *Business Auto Policy*

Although Illinois law governs the construction of the three insurance policies at issue in this case, Indiana law determines the statutory minimum required under the Business Auto Policy. Plaintiff argues that the Business Auto Policy is the only policy through which it has any liability in this case, and that it has satisfied its responsibility by depositing the appropriate amount into court. Defendants maintain that Plaintiff is liable not only under this policy, but also under both excess policies; they do not challenge the plaintiff's satisfaction of its obligations under the Business Auto Policy.

■ Plaintiff acknowledges that Alkhuaini is an insured under the Business Auto Policy by virtue of an endorsement to the policy

---

1. Defendants, in their arguments regarding the choice of law question, initially emphasized language from what turned out to be an exhibit wrongly stipulated to by the parties. The original Exhibit D was apparently a copy of a 1995 rental agreement, rather than the 1993 rental agreement actually signed by Alkhuaini. The 1993 agreement subsequently supplanted the original exhibit D, and so what may have been the Defendants' most compelling argument to apply West Virginia law is no longer properly before this court.

extending coverage to a vehicle renter. Ex. A, Endorsement 7. The Business Auto Policy provides that when an automobile is away from the state where it is licensed, in this case, Illinois, U.S. Fire will:

> Increase the Limit of Insurance for Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered 'auto' is being used.

Ex. A, § II(A)(2)(b)(1).[2] Alkhuaini's accident occurred in Brown County, Indiana. Stipulations ¶ 17. Indiana's financial responsibility statute requires an insurer to pay a greater amount than the comparable Illinois statute. Ill.St.Ann. ch. 625 § 5/7–203; cf. Budget Rent–A–Car Sys., Inc. v. Pratt, No. 94–C–6068, 1995 WL 505950 (N.D.Ill. Aug. 28, 1995) (refusing to allow state-of-accident compulsory minimum statute to apply where state of accident provided less than Illinois' statute). Accordingly, it is Indiana's financial responsibility statute that determines the compulsory minimum amount U.S. Fire is obligated to pay under this policy. See Ind. Code Ann. 9–25–4–5.

▇ As stipulated, U.S. Fire has deposited into court the balance of monies owed under the Indiana statute. Stipulations ¶ 21. U.S. Fire maintains that because it has satisfied its liability obligations under the Business Auto Policy, it has discharged all of its duties under this policy. Defendants do not respond to this argument.

The Business Auto Policy provides that U.S. Fire's "duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements." Ex. A, § II(A). Accordingly, U.S. Fire has discharged its duty to indemnify and to defend its insureds, both Barker and Alkhuaini, under the Business Auto Policy. Zurich Ins. Co. v. Raymark Indus. Inc., 118 Ill.2d 23, 52, 514 N.E.2d 150, 163, 112 Ill.Dec. 684, 697 (Ill.1987); Country Mut. Ins. Co. v. Anderson, 257 Ill.App.3d 73,

80, 628 N.E.2d 499, 504, 195 Ill.Dec. 35, 40 (Ill.App.Ct.1993), appeal denied, 155 Ill.2d 563, 633 N.E.2d 4, 198 Ill.Dec. 542 (Ill.1994).

In addition, U.S. Fire requests that the deposited funds be distributed on an equitable basis among the claimants. Defendant Transamerica also moved this court to find that it is entitled to a pro rata share of the deposited funds on the basis of the $5,324.69 it has already paid to the Lawrences. No party challenged this suggested method of distribution. Accordingly, this court directs that the $55,324.69 deposited into court by U.S. Fire should be distributed on an equitable, pro rata basis among all of the claimants involved in this lawsuit after the appropriate amounts owed to each have been determined.

## C. The Excess Policies

Plaintiff maintains that under the First and Second Excess Policies, Barker, and Barker alone, is insured. Just as with the Business Auto Policy, Barker is the named insured on the policy. However, unlike the Business Auto Policy, the Excess Policies do not carry endorsements expressly extending coverage to the renter of a car. In fact, Plaintiff points out, both policies contain endorsements excluding "rentees" from coverage. Exs. B, Endorsements 3 & 4; C, Endorsement 3.

In Illinois, "[i]f the words in [an insurance] policy are unambiguous, a court must afford them their plain, ordinary, and popular meaning. However, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed in favor of the insured." Caterpillar, Inc. v. Aetna Casualty and Sur. Co., 282 Ill.App.3d 1065, 668 N.E.2d 1152, 218 Ill.Dec. 320 (Ill.App.Ct.1996) (quoting Outboard Marine Corp. v. Liberty Mut. Ins. Co., 154 Ill.2d 90, 108–09, 607 N.E.2d 1204, 1212, 180 Ill.Dec. 691, 699 (Ill.1992)). The

---

2. This is consistent with the rental agreement which provides that liability insurance extended to a car renter "is in an amount up to, but in no event in excess of, the minimum limits required by the automobile financial responsibility or compulsory insurance laws of the state in which the accident occurs, unless other limits are provided pursuant to a separate commercial account Agreement." Ex. D, ¶ 9. The parties stipulated that Alkhuaini "was not registered as a special agreement customer with respect to the rental agreement ... or the rental of the Auto." Stipulations ¶ 16.

First Excess Policy contains an endorsement which states:

> This Insurance does not apply to the rentee or to any ultimate net loss, claim occurrence, accident, loss damages or liatility [sic] imposed upon such rentee when such ultimate net loss, claim, occurrence, accident, loss, damages or liability arises out of the use, possession, or control of a covered auto by such rentee.
>
> The above does not apply with respect to certain rentees addressed within the Illinois Motor Vehicle Code, Chapter 95:5, Section 9–1015....

Ex. B, Endorsement 3.

■ The Illinois Motor Vehicle Code cited within Endorsement 3 of the First Excess Policy provides:

> A motor vehicle liability policy in a solvent and responsible company, *authorized to do business in the State of Illinois,* ... shall serve as proof of financial responsibility; provided however, every such policy provides insurance insuring the operator of the rented motor vehicle against liability upon such insured *to a minimum amount of $50,000 because of bodily injury to, or death of any one person or damage to property and $100,000 because of bodily injury to or death of 2 or more persons in any one motor vehicle accident.*

Ill.Ann.Stat. ch. 625 § 5/9–105 (formerly cited as Ill.Ann.Stat. ch. 95 1/2 ¶ 9–105) (emphasis added). Barker's principal place of business is Illinois, thus, clearly, it is authorized to do business there. Because the Business Auto Policy provides less coverage than this Illinois statute requires, Alkhuaini qualifies as an insured under Endorsement 3 of the First Excess Policy. Accordingly, U.S. Fire may be liable for the difference between the coverage under the Business Auto Policy and the minimum required under Illinois Law and the First Excess Policy. In other words, under the First Excess Policy, U.S. Fire may be liable for an additional $40,000 for property damage and $50,000 liability resulting from Alkhuaini's accident.

■ Plaintiff argues that Alkhuaini does not qualify as a "certain rentee" within the meaning of Illinois Law and the First Excess Policy because Alkhuaini rented his car in West Virginia. Plaintiff maintains that Section 5/9–101 of the Illinois Motor Vehicle law provides that Section 5/9–105 applies only to rentals occurring in Illinois. This argument is betrayed by the plain language of that section which provides that "[t]he delivery of a vehicle rented by an out-of-state person or business to a renter in this state shall constitute engaging in the rental business in this state *for the purposes of this Section.*" Ill. Ann.Stat. ch. 625 § 5/9–101 (emphasis added). Section 5/9–105 does not reference Section 5/9–101 of the Illinois Code, and, by its own terms, this Section of the Code applies only to itself. Plaintiff's argument is specious.

Both Excess Policies also carry an endorsement that provides:

> THIS INSURANCE DOES NOT APPLY TO THE RENTEE OR TO ANY ULTIMATE NET LOSS, CLAIM, OCCURRENCE, ACCIDENT, LOSS, DAMAGES OR LIABILITY IMPOSED UPON SUCH RENTEE WHEN SUCH ULTIMATE NET LOSS, CLAIM, OCCURRENCE, ACCIDENT, LOSS, DAMAGES OR LIABILITY ARISES OUT OF THE USE, POSSESSION, OR CONTROL OF A COVERED AUTO BY SUCH RENTEE. THE ABOVE DOES NOT APPLY WITH RESPECT TO CERTAIN RENTEE REGISTERED WITH NATIONAL CAR RENTAL SYSTEM, INCORPORATED AS A SPECIAL AGREEMENT CUSTOMER WHEREIN A LIMIT OF LIABILITY OF _____ APPLIES TO YOU AND THE RENTEE.

Exs. B, Endorsement 4; C, Endorsement 3. The First Excess Policy provides liability limits of $100,000/$300,000/$25,000 for special agreement customers. Ex. B, Endorsement 4. The Second Excess Policy provides a $1,000,000 limit for special agreement customers. Ex. C, Endorsement 3. Defendant Transamerica argues that the language of the Excess Policies is ambiguous, and thus, should be construed against U.S. Fire.

It is true that neither of the Excess Policies defines what constitutes a "special agreement customer." And, under Illinois law, it is also true that "the insurer, as the

drafter of the policy, could have stated exclusions clearly and specifically ... [and] [e]xclusionary provisions, therefore, are applied only where the terms are clear, definite and explicit." *State Farm Fire & Casualty v. Moore*, 103 Ill.App.3d 250, 256, 430 N.E.2d 641, 646, 58 Ill.Dec. 609, 614 (Ill.App.Ct. 1981); *see also University of Illinois v. Continental Casualty Co.*, 234 Ill.App.3d 340, 349, 599 N.E.2d 1338, 1345, 175 Ill.Dec. 324, 331 (Ill.App.Ct.1992), *appeal denied*, 147 Ill.2d 637, 606 N.E.2d 1235, 180 Ill.Dec. 158 (Ill.1992). However, a court will not create an ambiguity where none exists and "extrinsic evidence may be considered to determine the meaning of the words employed in the contract." *University of Illinois*, 234 Ill. App.3d at 349, 599 N.E.2d at 1345–46, 175 Ill.Dec. at 331–32; *see also American Standard Ins. Co. v. Allstate Ins. Co.*, 210 Ill. App.3d 443, 447, 569 N.E.2d 162, 165, 155 Ill.Dec. 162, 165 (Ill.App.Ct.1991), *appeal denied*, 141 Ill.2d 535, 580 N.E.2d 107, 162 Ill.Dec. 481 (Ill.1991).

█ All of the parties stipulated that Alkhuaini was not registered as a special agreement customer with respect to the rental of the car from Barker. Stipulations ¶ 16. And, Plaintiff, via an affidavit from the Assistant Secretary/Treasurer of Barker, maintains that a special agreement customer is a "corporate or institutional account which has previously negotiated rates and insurance coverage.... Had Mr. Alkhuaini been a special agreement customer with Barker ... the word 'RECAP,' followed by a six digit number, would have appeared in the rental agreement to show his corporate account affiliation." Anderson Aff. ¶¶ 8, 10. The terms of the policy unambiguously evidence an intent to exclude non-corporate, individual renters such as Alkhuaini from coverage under the Excess Policies' special agreement customer endorsements.

Defendant Transamerica also maintains that Alkhuaini did not intentionally or knowingly waive his right to be covered under the Excess Policies, and that any waiver of coverage must be clear and decisive. In addition, Transamerica and both Lawrence defendants maintain that neither of these policies specifically excluded Alkhuaini from coverage. All of the defendants, however, chose to rely solely upon West Virginia law to support their arguments, and failed to offer this court any Illinois authority to advance their claims.

█ It is axiomatic that in order to waive a right, one must have a right. Alkhuaini was not a party to the Excess Policies, and was not within the coverage provisions by virtue of a special customer agreement. He therefore could not waive—intentionally or otherwise—any right to be insured under the Excess Policies. In addition, under Illinois law, U.S. Fire and Barker had no obligation to designate more specifically than they did the rentees to which the Excess Policies did not apply.[3]

█ Transamerica's final contention is that the rental agreement was an adhesion contract void for public policy because the terms of the agreement were not negotiable. This argument too is specious. By Defendant's logic, all rental contracts should be void by virtue of the inherently unequal bargaining power between the Insurer/Car Agency on the one hand, and the rentee on the other. Alkhuaini was not required to abandon a right legally his in order to rent a car from Barker. U.S. Fire has satisfied the public policies of both Indiana, the state of the accident, and Illinois, the state in which the insured Barker was authorized to do business, by meeting the statutory minimums required of it in both states. The rental agreement required no abrogation of those public policies, and is not void as an impermissible adhesion contract.

Finally, the Lawrence defendants maintain that Alkhuaini was insured under the excess policies by virtue of a West Virginia statute. This argument fails not only because West Virginia law does not apply to the construc-

---

**3.** West Virginia has a statute that requires an insurance company to exclude specifically any individual not covered by that policy. W.Va. Code § 33–6–31(a); *see also Burr v. Nationwide Mut. Ins. Co.*, 178 W.Va. 398, 359 S.E.2d 626 (W.Va.1987); *Jones v. Motorists Mut. Ins. Co.*, 177 W.Va. 763, 356 S.E.2d 634 (W.Va.1987). Illinois has no analogous statutory or judicially-created requirement.

tion of the insurance policies in this case, but also because the West Virginia statute expressly applies to automobiles licensed in the state of West Virginia. W.Va.Code § 33–6–29(b). The parties stipulated that Alkhuaini's rental car was licensed in Illinois. Stipulations ¶ 13.

Accordingly, U.S. Fire may be held liable under the First Excess Policy because of the Illinois statutory language referenced therein. However, it may not be liable under either Excess Policy by virtue of the special customer agreement endorsements to those policies.

### D. *"Step–Down" Provision*

Defendants Lawrence and the Estate of Barry Lawrence, maintain that the type of insurance arrangement at issue in this case, whereby an insurance company provides a rental agency with a higher amount of liability coverage than it does to individuals renting cars from that agency, violates public policy in Indiana. They maintain that because no court in Indiana has ever ruled on the validity of this so called "step-down" provision, this court should certify the question to the Indiana Supreme Court to determine if the insurance scheme is legitimate.

■■■■ This court is not just a little puzzled as to why defendants believe that Indiana's public policy applies to the question of whether a step-down insurance arrangement is legitimate, particularly after they relied exclusively on West Virginia law to support their arguments throughout their reply and cross-motion for summary judgment briefs. Nonetheless, briefly, this court believes that the insurance arrangement at issue in this case does not violate public policy in either Indiana or Illinois. Substantial case law in both states establishes that insurers may contract as they see fit provided they satisfy public policy concerns animating financial responsibility statutes. *See, e.g., Allstate Ins. Co. v. United Farm Bureau Mut. Ins. Co.*, 618 N.E.2d 31 (Ind.Ct.App.1993); *Coyne v. Country Mut. Ins. Co.*, 39 Ill. App.3d 279, 349 N.E.2d 485 (Ill.App.Ct.1976). Unlike the state of Wisconsin, which, Defendants urge us to note, has addressed this issue and invalidated a step-down insurance

scheme, neither Indiana nor Illinois has an omnibus statute requiring insurance coverage "to apply [to rentees] in the same manner and under the same provisions as it is applicable to the named assured." *Smith v. National Indemn. Co.*, 57 Wis.2d 706, 205 N.W.2d 365 (Wis.1973) (quoting WI. Stat. Ann. § 204.30(3)) (invalidating step-down insurance arrangement). By selectively providing insurance to certain rentees of its named insureds, an Illinois or Indiana insurer does not violate public policy, provided that it has simultaneously satisfied the statutory minimums it is legally obligated to honor.

### E. *INJUNCTION/STAY OF PROCEEDINGS*

As Plaintiff points out, the defendants Lawrence, the Estate of Lawrence, Old Dominion and Transamerica have agreed to stay any further proceedings related to their claims involved in this interpleader and declaratory judgment action until such time as this action is finally resolved, including any appeals. Stipulations ¶¶ 22–24. None of the defendants opposed this motion. Accordingly, this court enjoins each of these defendants from prosecuting their actions affecting the interpled Business Auto Policy funds until this action is finally resolved. 28 U.S.C. § 2361; *Mitchum v. Foster*, 407 U.S. 225, 235 & n. 14, 92 S.Ct. 2151, 2158 & n. 14, 32 L.Ed.2d 705 (1972); *General Railway*, 921 F.2d at 703.

### III.  CONCLUSION

U.S. Fire has satisfied its obligations under the Business Auto Policy at issue in this case by depositing the balance of monies owed under that policy into court. Those monies are to be distributed to appropriate claimants on an equitable, pro rata basis. The actions presently stayed involving the interpled Business Auto Policy funds are to remain stayed until a final resolution of issues affecting those sums is reached, including any appeals. U.S. Fire may be liable under the First Excess Policy for an additional $40,000 for property damage and $50,000 liability resulting from Alkhuaini's accident. U.S. Fire is not liable under the First

Excess Policy nor the Second Excess Policy on the basis of a special agreement customer endorsement.

It is so ORDERED.

## JUDGMENT

In accord with today's Entry in the above named cause, the court grants U.S. Fire's motion for summary judgment on the question of the Business Auto Policy because U.S. Fire has satisfied its obligations under the Auto Policy by depositing the balance of monies owed into court. Those monies are to be distributed to appropriate claimants on an equitable, pro rata basis. U.S. Fire's motion to stay those actions presently stayed implicating the interpled Business Auto Policy funds is granted. The pending actions are to remain stayed until a final resolution of issues affecting those sums is reached, including any appeals. U.S. Fire's motion for summary judgment is denied in part, and the Defendants' cross-motions for summary judgment granted in part, on the question of U.S. Fire's liability under the First Excess Policy. U.S. Fire may be liable under the First Excess Policy for an additional $40,000 for property damage and $50,000 liability resulting from Alkhuaini's accident. U.S. Fire is not liable under the First Excess Policy nor the Second Excess Policy on the basis of a special agreement customer endorsement, and, accordingly, summary judgment is granted to Plaintiff on those claims. All of the parties are to bear their respective costs in this case.

It is so ORDERED.