RIPPLE, Circuit Judge.
United States Fire Insurance Company (“U.S. Fire”) filed a complaint for interpleader and declaratory judgment in the United States District Court for the Southern District of Indiana. It sought a determination of its contractual rights and obligations under three insurance policies for claims arising out of a November 26, 1993, motor vehicle accident. Specifically, U.S. Fire sought a determination that its deposit of certain funds with the district court satisfied its obligations under a Business Auto Policy issued to Barker Car Rental (“Barker”) and that neither its First nor Second Excess Policy issued to Barker was implicated by the accident which involved Bader Alkhuaini, who had rented one of Barker’s vehicles. On cross-motions for summary judgment, the district court held that U.S. Fire had satisfied its obligations under the Business Auto Policy and that the Second Excess Policy was not implicated. However, the district court held that Alkhuaini was partially covered under the First Excess Policy. U.S. Fire now appeals the district court’s decision with respect to its liability under the First Excess Policy. For the reasons set forth in the following opinion, we reverse the judgment of the district court and remand for further proceedings.
I
BACKGROUND
A.
On November 24, 1993, Bader Alkhuaini, a citizen of Kuwait, rented a 1993 Pontiac from Barker in Huntington, West Virginia. The ear rented to Alkhuaini was licensed in Illinois and carried Illinois plates. In the rental agreement signed by Alkhuaini, Barker agreed to provide liability insurance for Alk-huaini. Two days later, Alkhuaini was driving in Brown County, Indiana, and was involved in an accident with Barry and Verna Lawrence, Kimberly Creech and David Davies. Alkhuaini and Barry Lawrence died as a result of the accident. The others sustained personal injuries and property damage.
At the time of the accident, Barker held three insurance policies issued by U.S. Fire: a Business Auto Policy, a First Excess Policy and a Second Excess Policy. All three policies were negotiated and delivered at Barker’s principal place of business in Blooming-ton, Illinois.
On September 9, 1994, U.S. Fire filed this interpleader and declaratory judgment action in the United, States District Court for the Southern District of Indiana to determine its obligations under these three insurance policies. Barker, Alkhuaini’s Estate, Barry Lawrence’s Estate, Verna Lawrence, Creech and Davies were all named as defendants in this action.[1] Transamerica Insurance Group, the Lawrences’ insurer, and Old Dominion Insurance, Creech’s insurer, were also included as defendants in this action because each had paid its insured as a result of, the accident.
*1155 In Count I of its complaint, U.S. Fire sought interpleader and declaratory judgment as .to the Business Auto Policy. Specifically, U.S. Fire admitted that Alkhuaini was covered by that policy. It deposited with the district court the remaining funds available under that policy for equitable, distribution among the various claimants.[2] IJ'.S. Fire also sought a declaration that its obligation under the Business Auto Policy to defend and indemnify Alkhuaini with respect to any claims or lawsuits arising out of the accident was extinguished by the-deposit of those.funds with the district court. In Counts II and III of its complaint, U.S. Fire requested declaratory relief as to the First and Second Excess Policies. U.S. Fire contended that Alkhuaini did not qualify as an insured under either policy and that it had no obligation to defend or indemnify Alkhuaini under those policies for any claim or lawsuit arising out of the November 26, 1993, motor vehicle accident.
Three of the defendants filed cross-claims against U.S. Fire. Both Transamerica and Old Dominion had paid their insureds for their property damage and therefore sought to enforce their subrogated interests. The Lawrence Estate and Mrs. Lawrence had filed a separate action for personal injury and wrongful death; this action was consolidated as a cross-claim for purposes of judicial economy. All three defendants agreed to stay prosecution of their cross-claims pending resolution of the coverage issues in U.S. Fire’s complaint for interpleader and declaratory judgment.[3]
On February 20, 1996, U.S. Fire filed a motion for summary judgment in its action for interpleader and declaratory judgment. A few days later, the Lawrences and Trans-america each filed cross-motions for summary judgment.
B.
’ On October 4, 1996, the district court issued its decision. It granted U.S. Fire’s motion for summary judgment on Counts I and III of its complaint. However, it granted the defendants’ crossmiotions for summary judgment on Count II. See United States Fire Ins. Co. v. Barker Car Rental, 944 F.Supp. 739, 748 (S.D.Ind,1996). The district court held that U.S. Fire had satisfied its obligations -under the Business,Auto Policy by depositing with the epurt the baL anee of the monies owed under that policy. Id. It further held that Alkhuaini was not covered under the Second Excess Policy. Id. However, with respect to the First Excess Policy, it held that Alkhuaini was partially covered under that policy and that U.S. Fire had an obligation to defend and indemnify Alkhuaini to the extent he was covered under the policy. Id.
At the outset of its analysis of the First Excess Policy, the district court noted that Barker, and Barker alone, is the named[1] insured under that policy. Id. at 744. Unlike the Business Auto Policy, the First Excess Policy- does not carry, the court continued, endorsements expressly extending coverage to the individual renting the car. Id. In fact, “rentees” are specifically excluded from coverage by Endorsement 3 to the First Excess Policy. Id. Endorsement 3 states:
This Insurance does not apply to the ren-tee or to any ultimate net loss, claim occurrence, accident, loss damages or liatility [sic] imposed upon such rentee when such ultimate net loss, claim, occurrence, accident, loss, damages or liability arises out of the use, possession, or control of a covered auto by such rentee.
*1156 Id. at 745. Endorsement 3, however, provides for one exception to the rule that ren-tees are not covered:
The above does not apply with respect to certain rentees addressed within the Illinois Motor Vehicle Code, Chapter 95:5, Section 9-1015 [sic]....

Id.

The district court then examined whether Alkhuaini was a “certain rentee” addressed by the section of the Illinois Motor Vehicle Code cited in Endorsement 3. Id. at 745. That Section provides:
A motor vehicle liability policy in a solvent and responsible company, authorized to do business in the State of Illinois, ... shall serve as proof of financial responsibility; provided however, every such policy provides insurance insuring the operator of the rented motor vehicle against liability upon such insured to a minimum amount of $50,000 because of bodily injury to, or death of any one person or damage to property and $100,000 because of bodily injury to or death of 2 or more persons in any one motor vehicle accident.
625 ILCS 5/9-105 (formerly cited as Ill.Ann. Stat. ch. 95$ ¶ 9-105). After examining this statute, the district court concluded that § 5/9-105 applied to Barker because the company was “authorized to do business” in Illinois. See United States Fire Ins. Co., 944 F.Supp. at 745. The court then determined that Alkhuaini was one of the “certain ren-tees” referred to in Endorsement 3 because the Business Auto Policy provided less coverage than required by § 5/9-105. Id. Thus, the district court held that Alkhuaini was partially covered under the First Excess Policy in the amount necessary to close the gap between the coverage provided under the Business Auto Policy and that required by Illinois law. Id. That amount is an additional $40,000 of coverage for property damage claims and another $50,000 of coverage for bodily injury claims. Id.
II
DISCUSSION
The standard governing our review is well established. Because the district court decided this case on summary judgment, we review that decision de novo. See Ortiz v. John O. Butler Co., 94 F.3d 1121, 1124 (7th Cir.1996), cert. denied, — U.S. -, 117 S.Ct. 957, 136 L.Ed.2d 843 (1997).
The First Excess Policy covers rentees who fall within the ambit of § 5/9-105. As we just noted, the district court concluded that § 5/9-105 applied to all car rental companies authorized to do business in Illinois. See United States Fire Ins. Co., 944 F.Supp. at 745. Because Barker was authorized to do business in Illinois, the district court reasoned, § 5/9-105 required Barker to provide the minimum coverage required by that statute to all individuals renting its cars regardless of where the rental took place. Id. We therefore must determine the correctness of that interpretation of § 5/9-105.
In resolving this question, we must, of course, interpret the statute as we believe that the Supreme Court of Illinois would interpret it if the matter were before that court today. See Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Therefore, in ascertaining the meaning of § 5/9-105, we must apply the same rules of statutory construction that the Supreme Court of Illinois would apply if it were faced with the same task. See Thomas v. Reliance Ins. Co., 617 F.2d 122, 125 (5th Cir.1980).
In Illinois, the applicable principles of statutory construction are well established. The primary rule is that courts should ascertain and give effect to the intention of the legislature. See Abrahamson v. Illinois Dep’t of Prof'l Regulation, 153 Ill.2d 76, 180 Ill.Dec. 34, 41, 606 N.E.2d 1111, 1118 (1992). To achieve that goal, we must regard the language of the statute as the best indication of legislative intent. Id. In reading that language, we must give the statutory terms their ordinary meaning. See In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989, 167 Ill.2d 161, 212 Ill.Dec, 215, 219, 656 N.E.2d 1049, 1053 (1995). When the language of the statute is certain and unambiguous, the only legitimate function of the judiciary is to enforce the law as enacted by the legislature. *1157 See Abrahamson, 180 Ill.Dec. 34, 606 N.E.2d at 1118. However, when “the meaning of a statute is unclear from the statutory language itself, a court may look beyond the language employed and consider the purpose of the law and the evils the law was designed to remedy.” In re Application for Judgment, 212 Ill.Dec. 215, 656 N.E.2d at 1053.
When interpreting a statute, we must evaluate the statute as a whole and construe each provision in context with every other section. See Abrahamson, 180 Ill.Dec. at 41, 606 N.E.2d at 1118; Sulser v. Country Mut. Ins. Co., 147 Ill.2d 548, 169 Ill.Dec. 254, 256, 591 N.E.2d 427, 429 (1992) (when interpreting a statute, each section of the act should be construed with every other part or section to produce á harmonious whole). We also must consider other statutes addressing the same subject. See In re Application for Judgment, 212 Ill.Dec. 215, 656 N.E.2d at 1053. Finally, when determining the meaning of a particular statutory provision, we ought to assume that the legislature did not intend an absurd result. See Stewart v. Industrial Comm’n, 115 Ill.2d 337, 105 Ill.Dec. 215, 217, 504 N.E.2d 84, 86 (1987).
With these principles in mind, we turn now to the specific issue in this case: Whether 625 ILCS 5/9-105 mandates that any car rental company authorized to do business in Illinois provide all of its customers with the minimum amount of insurance coverage specified therein regardless of where the rental occurs. More precisely,' we must determine whether the Illinois legislature intended § 5/9-105 to apply to out-of-state rentals such as the one in this case.
We look first to the language of the statute. This language must be read in the context of the entire statute. Section 5/9-105 is part of the Illinois Car Renter’s Financial Responsibility Act. That Act makes it unlawful for an individual or entity to engage in the business of renting motor vehicles in Illinois without providing the Secretary of State with “proof of financial responsibility.” See 625 ILCS 5/9-101. The Act provides three methods by which the owner of a rental car company can give proof of financial responsibility. See 625 ILCS 5/9-102. Section 5/9-105 sets forth one of those methods:
Insurance policy as proof — requirements. A motor vehicle liability policy in a solvent and responsible company, authorized to do business in the State of Illinois, providing that the insurance carrier will pay any judgment within 30 days after it becomes final, recovered against the customer or against any person operating the motor vehicle with the customer’s express or implied consent, for damage to property other than to the rented motor vehicles, or for an injury to or for the death of any person, including an occupant of the rented motor vehicle, resulting from the operation of the motor vehicle shall serve as proof of financial responsibility; provided however, every such policy provides insurance insuring the operator of the rented motor vehicle against liability upon such insured to a minimum amount of $50,000 because of bodily injury to, or death of any one person or damage to property and $100,000 because of bodily injury to or death of 2 or more persons in any one motor vehicle accident.
625 ILCS 5/9-105.
The text of the section, standing alone, yields no clear answer as to whether the Illinois legislature intended the Car Renter’s Financial Responsibility Act to require car rental companies authorized to do business in Illinois to provide the minimum amounts of coverage even when the actual rental and delivery of the car takes place outside Illinois. When we read that language in the context of the other statutory sections, however, the reason and necessity for the law, the evil sought to be remedied and the purpose to be achieved become more obvious. As noted earlier, the Act requires those engaged in the business of renting ears in Illinois to furnish “proof of financial responsibility” to the Secretary of State. See 625 ILCS 5/9-101. Section 5/9-105, in turn, provides that a car rental company can satisfy the requirements of the Act by purchasing liability insurance covering its rentees in the specified minimum amounts from an insurance company authorized to do business in Illinois. Upon consideration of the Act as a whole, then, it is clear that its main purpose is the protection of persons in Illinois from *1158 the negligent acts of those who drive rental vehicles within the state. See Insurance Car Rentals, Inc. v. State Farm Mut. Auto. Ins. Co., 152 Ill.App.3d 225, 105 Ill.Dec. 387, 392, 504 N.E.2d 256, 261 (1987). Section 5/9-105 helps to effectuate this purpose by requiring that all entities engaging in the business of renting cars ,in Illinois provide those who rent automobiles with the minimum amount of liability insurance specified therein. This purpose is adequately achieved by requiring the additional liability limits on vehicles that are rented and delivered in Ilhnois and therefore pose a danger to individuals in Illinois. Indeed, the purpose of the Act is not furthered by extending the reach of the Act to cover cars rented outside of Illinois. Thus, it seems likely that the legislature intended the Act to apply only to cars actually rented and delivered in Illinois.
This conclusion is strengthened by examining a recent amendment to the Act. In 1992, .the IUinois legislature amended § 5/9-101. This amendment, introduced in the. legislature as House BUI 2979, added the last sentence to the first paragraph of that section.[4] Specifically, the amendment added the following language:
The deUvery of a vehicle owned by an out of State person, or business to a renter in this State shaU constitute engaging in the rental business in this State for purposes of this Section.
P.A. 87-1220 (H.B. 2979) (1992). This amendment brings in-state rentals by out-of-state car rental companies within the ambit of the Act.
The purpose of this amendment was stated clearly in a letter to the IUinois House of Representatives from Governor Edgar. In that letter, Governor Edgar exercised his amendatory veto power[5] and suggested a minor change to another part of House Bill 2979.[6] Before suggesting this change, however, the Governor expressed his view of the bhl’s purpose:
House Bill 2979 amends separate provisions to make them applicable to out-of-state rental agreements of 30 days or less involving a motor vehicle delivered by an out-of-state person or business to a renter in this state. The amendments establish the same protections for state residents renting an out-of-state vehicle for use instate as when the transaction is intra-state.
Journal of the Illinois House of Representatives 9089 (1992). The Governor’s comments make clear that the purpose of the Act is to protect IUinois residents. Indeed, although neither the amendment itself nor the amen-datory veto expUcitly excludes all out-of-state rentals from the reach of the Act, both clearly indicate that the focus of the Act is instate rentals. Accordingly, both the amendment itself and the amendatory veto are strong evidence that the legislature did riot intend the Act to apply to out-of-state rentals.
That conclusion is further buttressed by a consideration of the results that would obtain if we were to accept the district court’s interpretation of § 5/9-105. In this case, the district court read § 5/9-105 to require that all car rental companies “authorized to do business in the State of Ilhnois” provide the specified minimum liabüity coverage to aU their rentees regardless of where the actual rental took place. If this interpretation were correct, every car rental company operating at Chicago’s O’Hare Airport would be required to provide the IUinois liabüity limits *1159 for every car it rented — not only at O’Hare, but anywhere in the nation.
The appellees also suggest a narrower interpretation of the district court’s holding. They argue that the mandatory minimum liability coverage specified in § 5/9-105 applies to all vehicles titled and plated in Illinois which are rented and owned by a corporation having its principal place of business in Illinois, regardless of where the rental occurs. This interpretation, however, cannot be squared "with the obvious role that § 5/9— 105 plays in the overall statutory scheme— one of several methods by which the owner of a rental car company renting cars in Illinois may establish proof of financial responsibility for rental transactions that occur within Illinois.
In this case, it is undisputed that Barker rented the car to Alkhuaini in West Virginia. It is also undisputed that Endorsement 3 to the First Excess Policy provides limited coverage to rentees only if they fall within the ambit of 625 ILCS 5/9-105. Because we have determined that § 5/9-105 does not apply to out-of-state rentals, Alkhuaini is not covered under the First Excess Policy. U.S. Fire, therefore, has no obligation to defend or indemnify Alkhuaini under that policy for any claim or lawsuit arising out of the November 26,1993, motor vehicle accident.
Conclusion
For the reasons we have discussed, we reverse the decision of the district court and remand this case to the district court for further proceedings consistent with this opinion.
Reversed and Remanded.

. The Alkhuaini estate was established in Brown County, Indiana, for purposes solely related to this litigation. Similarly, an estate was established for Barry Lawrence in Delaware County, Indiana, also solely for purposes of this litigation. Neither Creech nor Davies appeared in the action before the district court or made a claim as to any of the insurance policies at issue. Thus, when the applicable statute of limitations expired and no claim had been asserted by these individuals, the parties entered into a stipulation authorizing the dismissal without prejudice of Creech and Davies. Accordingly, Creech and Davies were dismissed from this suit by the district court.

. In this case, the liability limits under the Business Auto Policy were set according to the minimum liability limits required by Indiana, the state where the accident occurred. The minimum liability limits required under Indiana law are $25,000 per person, $50,000 per occurrence, and $10,000 for property damage. See Ind.Code 9-25-4-5. Thus, in this case, the total amount of coverage available under the Business Auto Policy is $60,000: $50,000 for bodily injury claims and $10,000 for property damage claims. All of the parties stipulated that U.S. Fire, prior to initiating this ¿ction, had already paid a total of $4,605.31 under the property damage limits. The parties further agree that U.S. Fire deposited $55,324.69 with the district court which, according to the parties, is the remaining liability under the policy. Although it would appear that an additional $70 is available under this policy, no party seeks judicial redress with respect to that amount.

. The district court has entered the requisite certification under Rule 54(b) of the Federal Rules óf Civil Procedure.

. This amendment became effective on July 1, 1993, and thus was in effect at all times relevant to this case.

. In Illinois, when the Governor exercises his amendatory veto power, he is acting in a legislative capacity, and for that purpose, he is part of the legislative department. See Department of Cent. Mgt. Serv. v. Illinois State Labor Relations Bd., 249 Ill.App.3d 740, 188 Ill.Dec. 875, 879, 619 N.E.2d 239, 243, appeal denied, 153 Ill.2d 558, 191 Ill.Dec. 617, 624 N.E.2d 805 (1993). The Governor exercises this power by returning the bill to the house of the legislature in which it originated with specific recommendations for change. Id. Both houses of the legislature must then vote on the Governor’s recommendations. Id. The bill becomes law if both houses vote to accept the Governor's recommendations. Id. Accordingly, "any recommended changes by the Governor that are accepted by the legislature must be interpreted as being part of the legislature’s intent behind the statute.” Id.

. The Governor did not suggest any changes to the proposed amendment to § 5/9-101.